**Algiers MUSE, Plaintiff–Appellant,**

v.

**Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant–Appellee.**

**No. 90–3221**

**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Jan. 18, 1991.

Gerald Issokson, Barkan & Neff, New Orleans, La., for plaintiff-appellant.

Christopher Carillo, Asst. Regional Counsel, Dallas, Tex., John P. Volz, U.S. Atty., Glenn Schreiber and Nancy A. Nungesser, Asst. U.S. Attys., New Orleans, La., for defendant-appellee.

Before JOLLY, HIGGINBOTHAM, and JONES, Circuit Judges.

PER CURIAM:

## I.

In September of 1985 Muse filed the claims that are the subject of this action, seeking supplemental security income and disability insurance benefits.[1] Muse based these claims on complaints about back pain, neck pain, headaches, and foot problems. The Secretary of Health and Human Services ("the Secretary") denied the claims. At the subsequent hearing the administrative law judge ("ALJ") found that Muse could not perform his past relevant work but could perform light work. The Appeals Council declined to review Muse's claim, and hence the ALJ's decision became the Secretary's final decision. Pursuant to 42 U.S.C.A. § 405(g) (West 1983), Muse filed for judicial review of the decision in federal district court. In March of 1987, Muse requested that the Secretary reopen the case because, after the Secretary's previous denial of his claim, Muse had obtained a psychiatric report indicating that he is mentally retarded. The Secretary moved to remand the case for further determination. The Appeals Council then vacated its earlier denial and vacated the ALJ's decision and remanded the case to another ALJ for a new hearing.

On January 5, 1988 the ALJ heard Muse's case. On February 29, 1988, he recommended finding that Muse *could* perform all of his past relevant work and thus was ineligible for disability benefits. The Appeals Council adopted the ALJ's recommendation, thus making it the Secretary's final decision. In the district court the Secretary moved to reopen Muse's case; the district court granted the motion. The Secretary then filed an answer to Muse's complaint. Muse moved for summary judgment on the ground that he had met the objective requirements of the social security regulations for disability resulting from retardation. The Secretary in turn moved for summary judgment on the ground that substantial evidence supported his decision. Following the recommendations of the federal magistrate, the district court granted the Secretary's summary judgment motion and dismissed Muse's suit. Muse then brought this appeal.

The following narration traces the portion of Muse's health history that is relevant to this appeal. From October 1981 until February 1982, Muse received treatment for respiratory problems and back and neck problems at Lallie Kemp Charity Hospital. The October 1981 tests showed Muse to have a full range of back and neck motion. X-rays in December 1981 showed a "questionable slight disc narrowing." The person who examined Muse at that time diagnosed a muscle spasm in Muse's neck and prescribed Motrin. Muse's examiners in January and February of 1982 also noted back and neck pain. Specifically, they noted a narrowed disc, but observed that the Motrin was controlling Muse's neck pain.

In September and November of 1982 Dr. Charles Genovese examined Muse at the request of the Louisiana Department of Health and Human Resources. Dr. Genovese diagnosed Muse as suffering from nervousness, arthritis, an old back injury, and a possible heart disorder. Dr. James Halley, an orthopedic surgeon, examined Muse on December 30, 1982. He reported that Muse complained of pain in his neck, lumbosacral spine, and in his extremities. Also at that examination Muse refused to walk on his heels because of his foot calluses. Dr. Halley noted no abnormalities, found good but slightly limited motion in Muse's back and neck, and noticed no muscle spasms in Muse's neck or back. Dr. Halley concluded that Muse may have been suffering from "old lumbosacral strain and cervical strain," that Muse exhibited no evidence of nerve-root irritation that would indicate a ruptured disc, and that Muse

1. Muse's current application for disability benefits also alleges that certain of his ailments began in June of 1980. However, a previous administrative decision adjudicated Muse's benefit entitlements through April 27, 1983. The appeals council denied review, and Muse did not seek further appellate review. Thus Muse's claim for benefits for the period before April 27, 1983, is subject to the doctrine of administrative *res judicata*. *See* 20 C.F.R. § 404.957(c)(1) (1990).

exaggerated his symptoms. He also concluded that Muse could do moderate work. During the same general time period, the Louisiana Department of Health and Human Resources requested that Muse get an eye-examination. Dr. Ralph Maxwell diagnosed Muse as being hyperopic and presbyopic, but described Muse's condition as "good" and said that there were no working conditions that Muse need avoid.

From February to May of 1986 Muse received treatment from a physician whose name does not appear in the record. Over the course of these eleven or so visits, Muse's conditions—especially his back and neck pain and shortness of breath—appeared to be responding to drug treatment and were improving with each visit. Although on the day of his seventh visit Muse suffered a cervical neck sprain in an automobile accident, by the eighth visit Muse was already responding well to physical therapy and analgesics prescribed for those conditions. The physician described the result of his neurological examination of Muse as unremarkable and characterized Muse's headaches as "fairly nondescript." The doctor continued for awhile to prescribe mild medications for pain. On the eleventh visit, in May 1986, the doctor reported that Muse was "doing fine," that he complained of no back pain, and that the results of his neurological examination were normal. The doctor's notes for that visit indicate that at that point Muse was "dismissed from [the doctor's] care."

It was not until February of 1987 that Muse was examined by a psychiatrist. At that time Dr. Nathan Lubin administered the Wechsler Adult Intelligence Scale test ("WAIS"), the Bender–Gestalt test, and the Wide Range Achievement Test ("WRAT"). On the WAIS test Muse scored a verbal I.Q. of 62, a performance I.Q. of 67, and a full-scale I.Q. of 62. Dr. Lubin concluded that the Bender–Gestalt test results suggested "gross neurological impairment" that could have contributed to mental retardation. Also, Muse scored below the third-grade level on the reading, spelling, and arithmetic portions of the WRAT. Dr. Lubin concluded that Muse could not manage his personal finances and that he would require close care for the rest of his life.

At the request of the Secretary, Muse was examined again in November of 1987 by Dr. John Pleune. Dr. Pleune administered the same tests as Dr. Lubin had. This time Muse scored a verbal I.Q. of 61, a performance I.Q. of 63, and a full-scale I.Q. of 58. During the tests Dr. Pleune noted that, despite Muse's use of glasses during the testing, he may have had difficulty seeing some of the small details. Muse apparently performed better on tests involving large figures, but had problems on the object-assembly section of the WAIS irrespective of the size of the figures used. The Bender–Gestalt test suggested "possible organic disfunctioning." The WRAT test administered by Dr. Pleune also yielded scores below the third-grade level in reading, spelling, and mathematics. The doctor suggested that Muse possessed limited judgment, could not abstract verbally, and had a very short immediate memory. He concluded that Muse was incapable of working, that his ability to follow directions was poor, and that he could not manage his personal finances. Muse's ability to make occupational, performance, and personal-social adjustments also was found to be fair to poor.

In December of 1987 the Secretary requested that another psychiatrist examine Muse. Dr. James Denney conducted this test, but, instead of conducting the same tests that had been done by the previous psychiatrists, he based his findings largely on his interview with Muse. He found, among other things, that Muse may have suffered from mild depression, that he followed a "goal-directed thought process," that he behaved appropriately in social situations, that he was slightly dependent on his wife, and that he was "culturally deprived if not mildly retarded." Dr. Denney concluded that, although Muse suffered from an adjustment disorder and anxiety, he could manage his personal finances and his ability to make occupational, performance, and personal-social adjustments was fair to good.

## II.

The standard of review in disability cases under 42 U.S.C.A. § 405(g) is whether the record contains substantial evidence to support the Secretary's findings. *Fraga v. Bowen,* 810 F.2d 1296, 1302 (5th Cir.1987). Substantial evidence is more than a scintilla and less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1976), *quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938). If supported by substantial evidence the Secretary's findings are conclusive. *Id.* 402 U.S. at 390, 91 S.Ct. at 1422; 42 U.S.C.A. § 405(g). The relevant statute defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.A. § 423(d)(1)(A) (West Supp.1990).

For the most part, the claimant bears the burden of proving his disability. *Jones v. Bowen,* 829 F.2d 524, 526 (5th Cir.1987). In evaluating a disability claim the Secretary follows a five-step sequential process, the first four steps of which place the burden on the claimant. First, a claimant must not be presently working. 20 C.F.R. § 404.1520(b) (1990). Second, a claimant must establish that he has an "impairment or combination of impairments which significantly limits [his] physical or mental ability to do basic work activities." *Id.* at § 404.1520(c). Third, to secure a finding of disability without consideration of age, education, and work experience, a claimant must establish that his impairment meets or equals an impairment enumerated in the listing of impairments in the appendix to the regulations. *Id.* at § 404.1520(d). Fourth, a claimant must establish that his impairment prevents him from doing past relevant work. *Id.* at § 404.1520(e). Finally, the burden shifts to the Secretary to establish that the claimant can perform relevant work. If the Secretary meets this burden, the claimant must then prove that he cannot in fact perform the work suggested. *Id.* at § 404.1520(f); *see also Fraga,* 810 F.2d at 1301–02.

The ALJ disposed of Muse's claim at step four. He found that Muse was not working and that his back, foot, and hypertension problems significantly limited his ability to work. However, he discredited the findings of doctors Lubin and Pleune that Muse was mentally retarded under the definition provided in the social security regulations. The ALJ then found that Muse's impairments were not listed in the list of impairments or medically equivalent to any listed impairments. The final finding was that Muse could perform his past relevant work. The question on appeal is whether these findings are supported by the record as a whole. Muse asks this court to reverse the district court's decision and either to award him benefits as a matter of law or to remand the case to a new ALJ.

## III.

Muse first argues that the ALJ improperly discredited the results of the WAIS tests indicating that Muse was retarded. The social security regulations in effect when the ALJ heard Muse's claim required use of a valid I.Q. test to establish mental retardation itself as a disability, unless the claimant's intelligence level was such that it could not be measured by standardized testing methods. 20 C.F.R. Part 404, subpart P, app. 1, § 12.05 (1987). The ALJ found the I.Q. test invalid because Muse did not wear eyeglasses and therefore had trouble seeing during the examinations and because Muse's education, work experience, and demeanor at the hearing called into question any I.Q. result indicating retardation.

Dr. Pleune's report stated that Muse had some trouble seeing during the administration of the second test. Also, Muse testified that he did not wear eyeglasses at the first I.Q. test either. Also, Muse's work experience belies that he was retarded. As a truck driver he read delivery tickets and made deliveries to destinations specified on

the tickets. He also testified that he passed a written exam to obtain his chauffeur's license. There is no evidence in the record that Muse had ever been fired from a job because he could not comprehend, remember, or carry out the mental or physical duties. The ALJ also found it noteworthy that at the hearing Muse demonstrated a remarkable memory of events from his remote past. Added to all this, the physician who treated Muse between February and May of 1986 found that Muse suffered from no neurological problems. An ALJ may make factual determinations on the validity of I.Q. tests. *Pierre v. Sullivan,* 884 F.2d 799, 803 (5th Cir.1989). The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record. *Bradley v. Bowen,* 809 F.2d 1054, 1057 (5th Cir.1987). We are persuaded that the ALJ's decision that the I.Q. tests were invalid is supported by substantial evidence in the record. Therefore, absent valid I.Q. tests, Muse failed to carry the burden of proving disability due to retardation under prongs two and three of the test.

■ Muse also contends that the ALJ's conclusion that Muse could perform past relevant work lacks substantial evidentiary support. Muse asserts that the ALJ ignored the reports relied upon by the previous ALJ who found that Muse could do only light work and the reports of Doctors Lubin and Pleune concluding that Muse had severe mental incapacities. We are persuaded, however, that the ALJ could have inferred from the unidentified physician's reports from 1986 that the drug treatment and physical therapy greatly alleviated Muse's back pains. Indeed, the judge properly gave substantial weight to these reports. Although administrative law judges are entitled to weigh medical evidence, *Bradley,* 809 F.2d at 1057, the opinions of treating physicians should get "considerable weight." *Johnson v. Bowen,* 864 F.2d 340, 347 (5th Cir.1988). Also the record does not support the suggestion that the ALJ ignored the reports of previous physicians who concluded that Muse suffered from significant physical and men-

tal impairments. The ALJ's decision to rely instead on the evaluation of the 1986 treating physician was within his authority and was supported by substantial evidence. According to that physician, Muse's back pain was gone and his neurological examination was normal in May of 1986, and the doctor discharged Muse from his care. Muse testified that he could still lift between 15 and 20 pounds. In his 1985 vocational reports he marked 10 pounds as the heaviest weight he lifted as a truck driver and 20 pounds as the heaviest weight as a saw mill worker. He listed 25 pounds as the heaviest weight that he frequently lifted for either job. These facts, too, support the ALJ's finding Muse could perform past relevant work. In sum, we are persuaded that the record contains substantial evidence supporting the ALJ's finding that Muse was capable of doing past relevant work.

■ Muse's contention that the Secretary is bound by the previous ALJ's finding that Muse could perform only light work is without merit. The Appeals council vacated its denial of Muse's claims based on the previous ALJ's decision and remanded Muse's case for re-determination on all issues. The social security regulations in effect when the Secretary made his decision permitted such a remand. 20 C.F.R. § 404.977 (1986); *see also Houston v. Sullivan,* 895 F.2d 1012, 1015 (5th Cir.1989). When the Secretary remands cases for re-determination, there is no rule of issue preclusion. *Id.*

■ Muse's final argument is that we should remand this case to be reheard before a different, impartial ALJ. The due process requirement that a litigant's claim be heard by a fair and impartial factfinder applies to administrative as well as judicial proceedings. *Helena Laboratories Corp. v. NLRB,* 557 F.2d 1183, 1188 (5th Cir. 1977). The Social Security regulations in effect when Muse's claim was before the ALJ and the appeals board in 1987 provided for the disqualification of prejudiced or partial administrative law judges. If a potentially prejudiced or partial ALJ opted not to

withdraw, the party alleging prejudice or partiality was to present his or her claim of bias to the Appeals Council following the hearing. 20 C.F.R. § 416.1440 (1990).

Muse claims that the ALJ, by certain language in his opinion, demonstrated obvious bias and prejudice against Muse. However, as to this bias claim, Muse failed to exhaust his administrative remedies. On February 29, 1988, the Department of Health and Human Services (HHS) mailed to Muse and his attorney a copy of the ALJ's recommended decision. At that time HHS also informed Muse of his right to object to the recommended decision, giving him twenty days to file such objections. Since, as Muse asserts, the alleged bias was evident in the ALJ's opinion, Muse should have been aware of his potential bias claim. Nevertheless, the Appeals Council waited two months before issuing the Secretary's final decision, and Muse never filed objections with the Appeals Council. Thus Muse failed to exhaust his administrative remedies on this issue. 20 C.F.R. §§ 404.900 and 416.1400 (1990); *see also Harper by Harper v. Bowen*, 813 F.2d 737, 739 (5th Cir.1987).

AFFIRMED.