**Ann THORNHILL Plaintiff**

v.

**COMMISSIONER OF SOCIAL SECURITY Defendant**

**No. CIV.A. 399CV861WS.**

United States District Court,
S.D. Mississippi,
Jackson Division.

Dec. 28, 2001.

Hansel Anthony Jones, Hansel Anthony Jones, Attorney, Jackson, for Ann Thornhill, plaintiffs.

Mitzi Dease Paige, U.S. Attorney's Office, Jackson, for Commissioner of Social Security, defendants.

### ·ORDER

WINGATE, District Judge.

Before the court is the objection of the Commissioner of Social Security (the "Commissioner") to the Report and Recommendation of the United States Magistrate Judge wherein the Magistrate Judge reversed the findings of the Administrative Law Judge (hereinafter the "ALJ") for the United States Office of Hearings and Appeals. The ALJ determined that the plaintiff Ann Thornhill on September 30, 1993 had a residual functional capacity for sedentary work and was not entitled to disability benefits. This decision was upheld by the Appeals Council for the Office of Hearings and Appeals in Falls Church, Virginia. The plaintiff Ann Thornhill then brought the case before this court for judicial review of the administrative determination in her case in accordance with Title 42 U.S.C. § 405(g).[1]

The United States Magistrate Judge, finding that the ALJ was faced with a "conspicuous absence of credible choices,"

---

1. Title 42 U.S.C. § 405(g) provides in pertinent part that, "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within

reversed the decision of the ALJ and found that on September 30, 1993, the plaintiff Ann Thornhill suffered severe osteoporosis and rheumatoid arthritis, and was wholly unable to perform any kind of work. The Magistrate Judge then remanded the case for payment of benefits, and the Commissioner filed this objection to the Magistrate Judge's determination.

This court reviews the Magistrate Judge's Report and Recommendation in this case *de novo* pursuant to Title 28 U.S.C. § 636(b)(1)(B & C)[2]. However, this court reviews the Commissioner's/ALJ's decision only to determine whether it is supported by "substantial evidence" on the record as a whole and whether the proper legal standard was applied. *Greenspan v. Shalala,* 38 F.3d 232, 236 (5th Cir.1994). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.,* citing *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). Furthermore, in applying the substantial evidence standard, this court scrutinizes the record to determine whether such evidence is present. This court will not re-weigh the evidence, try the issues *de novo,* or substitute its judgment for that of the Commissioner. *Id.,* citing *Haywood v. Sullivan,* 888 F.2d 1463, 1466 (5th Cir.1989); *see also Myers v. Apfel,* 238 F.3d 617, 619 (5th Cir.2001).

## THE ADMINISTRATIVE FINDINGS

■ The plaintiff Ann Thornhill, as the claimant applying for disability benefits, had the burden to show the Commissioner that on or before September 30, 1993 she was unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which could be expected to last for a continuous period of not less than 12 months in accordance with Title 42 U.S.C. § 423(d)(1)(A).[3] A claimant is eligible for benefits only if the onset of the qualifying medical impairment [or combination of im-

sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business, or, if he does not reside or have his principal place of business within any such judicial district, in the United States District Court for the District of Columbia. As part of the Commissioner's answer the Commissioner of Social Security shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based."

2. Section 636(a)(1)(B) provides that, "a judge may also designate a magistrate to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, of any motion excepted in subparagraph (A), of applications for posttrial [FN1] relief made by individuals convicted of criminal offenses and of prisoner petitions challenging conditions of confinement."

Section 636(a)(1)(C) provides that, "the magistrate shall file his proposed findings and recommendations under subparagraph (B) with the court and a copy shall forthwith be mailed to all parties. Within ten days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate. The judge may also receive further evidence or recommit the matter to the magistrate with instructions."

3. Title 42 U.S.C. § 423(d)(1)(A) defines a disability as the, "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result

pairments] began on or before the date the claimant was last insured. *Loza v. Apfel,* 219 F.3d 378, 394 (5th Cir.2000). The claimant bears the burden of establishing that a disabling condition existed before the expiration of her insured status. *Id.* In the instant case Thornhill was last insured on September 30, 1993.

## A. *Insured Status*

Thornhill filed her application for disability benefits March 18, 1997, and submitted medical records covering a period of time which spanned the years 1990 to 1994. Based on this record the ALJ first found that Thornhill met the disability insured status requirements on May 1, 1990 and continued to meet them through September 31, 1993. Once the eligibility period was determined by the ALJ, she proceeded to evaluate Thornhill's claim in accordance with the familiar five-step sequence.

## B. *The Five–Step Sequence for Determining Whether Claimant is Disabled*

The ALJ found that Thornhill was born on March 23, 1947, was married, had a high school education, and was last employed as a receptionist for a high school until May 1, 1990. The ALJ also found from the medical records presented that Thornhill suffered from rheumatoid arthritis, deterioration of the left shoulder, osteoporosis, pain and swelling of the ankles, wrists and hands, as well as the aftereffects of a non-trauma ankle fracture. Next, the ALJ found that Thornhill had a drivers license and was able to drive on a

regular basis. The ALJ also found from the medical record spanning the years 1990 to 1994 that Thornhill was able to walk up to 100 feet; that she could lift five pounds; that she could stand from 10 to 15 minutes; and that she could sit for up to 30 minutes. With these findings established, the ALJ proceeded to apply the five-step sequential evaluation of Thornhill to determine whether she was disabled on or before September 30, 1993.

When determining whether one has established a disability in accordance with the requirements of § 423(d), the first four steps of the five-step sequential evaluation place the burden of proof on the claimant. The fifth step, if found to be necessary, places the burden of proof on the Commissioner. *Boyd v. Apfel,* 239 F.3d 698, 704–05 (5th Cir.2001), citing *Muse v. Sullivan,* 925 F.2d 785, 789 (5th Cir.1991). A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis. *Greenspan,* 38 F.3d at 236, quoting *Lovelace v. Bowen,* 813 F.2d 55, 58 (5th Cir.1987).

The first four of the five steps are: (1) if the ALJ is presented with an individual who is working and engaging in substantial gainful activity, the individual will not be found disabled regardless of medical findings; (2) if the ALJ is presented with an individual who does not have a "severe impairment," the individual will not be found to be disabled; (3) an individual who meets or equals a listed impairment in 20 C.F.R. part 404, subpart P, appendix 1 [4]

---

in death or which has lasted or can be expected to last for a continuous period of not less than 12 months; ...." Furthermore, according to this statute, "[f]or purposes of paragraph (1)(A)—[a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work ex-

perience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work."

**4.** 20 C.F.R § 404, subpart P, appendix 1 lists almost 200 impairments applicable to individ-

will be considered disabled without the consideration of vocational factors; and (4) if an individual is capable of performing the work he has done in the past, a finding of "not disabled" will be made.

■ In the instant case the ALJ found that Thornhill was not engaged in substantial gainful activity and suffered from a combination of severe impairments. However, the ALJ also found that Thornhill's combination of impairments did not meet or equal one of the listed impairments in 20 C.F.R. § 404, subpart P, appendix 1. Finally, the ALJ found that on or before September 30, 1993, Thornhill was capable of performing the receptionist job she had performed in the past. Thus, the ALJ found that Thornhill was not disabled as of September 30, 1993.

■ In the event the ALJ had found step five to be necessary, that step is as follows: in the event an individual's impairment precludes him from performing his past work, the ALJ proceeds to the fifth step which places the burden on the Commissioner to show that other factors including age, education, past work experience, and residual functional capacity still preclude a finding of disability for the purposes of § 423(d). *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir.1994).

In the instant case the ALJ found that Thornhill had not worked since May 1, 1990 (step one). Next, the ALJ found Thornhill to be suffering from severe impairments, specifically rheumatoid arthritis, cervical spondylosis, degenerative joint disease, and depression. However, the ALJ found that Thornhill's depression was not severe prior to September 30, 1993, applying the Fifth Circuit's standard admonition that an impairment can be considered as not severe only if it is a slight abnormality having such minimal effect on the individual that it would not be expect-

ed to interfere with the individual's ability to work, irrespective of age, education or work experience. *Loza v. Apfel*, 219 F.3d 378, 391 (5th Cir.2000), citing *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985). The ALJ also noted that Thornhill had received only sporadic treatment for depression between mid–1980's and early 1990's (step 2).

Having found Thornhill to be suffering from a combination of severe impairments, the ALJ turned to 20 C.F.R. part 404, subpart P, appendix 1 and concluded that Thornhill's impairments did not meet or equal any of the listed impairments set forth in that appendix (step 3).

The ALJ concluded that Thornhill's current physical capabilities, notwithstanding her impairments, enabled her to do sedentary work up to and until September 30, 1993. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. While a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. For instance, sedentary work involves sitting for about six hours out of an eight hour work day and occasionally lifting items weighing no more than 10 pounds. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir.1995). Thus, jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a). The ALJ found that Thornhill's impairments restricted her ability to do heavy lifting and to engage in prolonged walking and standing prior to September 30, 1993. However, since Thornhill had worked previously as a receptionist and switchboard operator, and inasmuch as these are jobs performed at the sedentary exertional level which the ALJ found to be within Thornhill's capabilities, the ALJ concluded

uals over age 18 and to children under age 18      where appropriate.

that Thornhill was not disabled prior to September 30, 1993 because she still was capable of performing work she had done in the past (step 4). Having found Thornhill not disabled at step four of the sequential process, the ALJ did not have to proceed to step five. *Greenspan*, 38 F.3d at 236.

### C. *The Medical Evidence*

### 1. The Letters of the Treating Physicians

The Magistrate Judge relied on two letters written by two physicians. On November 25, 1997, Dr. Suthin Songcharoen wrote a general letter stating that Thornhill's current diagnosis included, "rheumatoid arthritis, osteoporosis with deterioration of her left shoulder, and lumbar spondylosis at multiple levels." According to Dr. Songcharoen, Thornhill's non-trauma ankle fracture was caused by the severity of this condition. Finally, Dr. Songcharoen stated that, "she (Thornhill) is not able to be employed in any capacity whatsoever, and will never reach a point where she is . . . ." The letter written by Dr. Songcharoen says nothing specifically about Thornhill's ability to work on or before September 30, 1993.

The second letter cited by the Magistrate Judge was written by Dr. J.O. Manning on March 31, 1998 and states that Thornhill, "has been followed by me on a recurring basis since 12/23/93 when she was seen with a complaint of pain in her left leg above the ankle." Of course, Dr. Manning did not treat Thornhill on or before September 30, 1993. He states that Thornhill, "would have significant difficulty in maintaining any kind of gainful occupation that required her to be on her feet for any length of time, either standing or walking or repeated getting up and down from the seated position." In this regard Dr. Manning's assessment of Thornhill's abilities as of March 31, 1998 is not so different from the ALJ's since being on

one's feet, standing and walking for lengthy periods of time, plus being required to get up and sit down repeatedly, describes activity which is not within the bounds of sedentary work (sitting up to six hours within an eight hour day).

Referring to the "enormous medical record to the contrary," and the two letters, the Magistrate Judge concludes that the ALJ should have found that Thornhill could perform no work on or before September 30, 1993. The Magistrate Judge suggests, *per force*, that the letters written by Dr. Songcharoen and Dr. Manning should have been given great weight in the ALJ's assessment of whether Thornhill was disabled. However, neither of the letters pertains to Thornhill's ability or inability to work on or before September 30, 1993. The statements made by the doctors are contemporaneous in nature. Thus, the letters were of no use regarding the issue before the ALJ, whether Thornhill was disabled for the purposes of section 423(d) on or before September 30, 1993.

Furthermore, after all the evidence is considered, it is the Commissioner who is responsible for making the determination or decision about whether a claimant meets the statutory definition of disability. In so doing, he reviews all of the medical findings and other evidence that a claimant is disabled, including statements (letters) by medical sources saying that a claimant is "disabled" or "unable to work." However, the opinion of the medical source that the claimant is disabled does not require the Commissioner also to determine that the claimant is disabled. *See* 20 C.F.R. 404.1527(e)(1).

The Fifth Circuit long has held that the opinions, diagnoses, and medical evidence of a treating physician(s) who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability.

*Greenspan,* 38 F.3d at 237; and *Loza,* 219 F.3d at 395. Such opinions, though, are not conclusive, and the ALJ ultimately must decide the claimant's status. *Greenspan,* 38 F.3d at 237. "Accordingly, when good cause is shown, less weight, little weight, or even no weight may be given to the physician's testimony. The good cause exceptions recognized by the Fifth Circuit include disregarding statements that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence." *Id.; see also Leggett v. Chater,* 67 F.3d 558, 566 (5th Cir.1995) (rejecting an "isolated, conclusory statement" of a treating physician when considered in conjunction with other opinions, objective medical evidence, and claimant's own testimony).

■ An ALJ also must consider the following factors before declining to give any weight to the opinions of a treating doctor: length of treatment, frequency of examination, nature and extent of relationship, support provided by other evidence, consistency of opinion with record, and specialization. *Myers v. Apfel,* 238 F.3d 617, 621–22 (5th Cir.2001).

In the instant case, the ALJ may have rejected the assertion that Thornhill was disabled based on Dr. Songchareon's and Dr. Manning's respective letters because neither letter addressed the possibility of Thornhill being unable to do any kind of work on or before September 30, 1993. Otherwise, this court is persuaded that the ALJ gave both the letters full weight insofar as they expressed opinions about Thornhill's inability to work after September 30, 1993, or later.

Therefore, this court simply is not persuaded by the Magistrate Judge's implication that these letters, together with the other medical evidence, compelled the ALJ to conclude that Thornhill was entitled to disability benefits.

## 2. Other Medical Evidence

This court has reviewed carefully the medical record relied upon by the ALJ and finds that while Thornhill was treated for various infirmities between 1990 and 1994, the record presents nothing to eliminate the possibility that Thornhill was capable of performing sedentary work on or before September 30, 1993, particularly her previous job as a receptionist and switchboard operator.

The ALJ noted that Thornhill was treated between February, 1993 and August, 1993, for hidradenitis, an uncommon disorder of unknown cause in which boil-like lumps develop in the groin, and some times under the arms and under the breasts. As noted by the ALJ, however, an impairment must last for a continuous period of not less than 12 months in accordance with Title 42 U.S.C. § 423(d)(1)(A) in order to be classified as disabling.

The ALJ also noted that while Thornton was treated for severe pain, she took no inordinate amount of medication, and presented no evidence that she suffered severe pain up through September of 1993. The ALJ referred to the psychiatric review attached to Thornhill's medical record which stated that Thornhill's depression had no impact on her daily activities up through September of 1993.

While this court does not review the Commissioner's findings *de novo,* this court has reviewed Thornhill's medical records to determine whether the ALJ might have overlooked anything which might overcome the evidence supporting the ALJ's finding of no disability. This court finds the record to be unclear regarding whether Thornhill was wholly unable to perform sedentary work on or prior to September 30, 1993.

## *CONCLUSION*

The ALJ's determination that Thornhill was not disabled before her insured status

ended on September 30, 1993 because she was able to perform her previous job must be affirmed unless that determination is either not supported by substantial evidence or involved an erroneous application of legal standards. *See Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir.1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir.1995). Substantial evidence is something more than a scintilla but less than a preponderance. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir.1995); *Villa v. Sullivan*, 895 F.2d 1019, 1021–22 (5th Cir.1990). Alternatively, substantial evidence may be described as that quantum of relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Villa*, 895 F.2d, at 1021–22. As this court noted previously, it will not "reweigh the evidence in the record, try the issues de novo, or substitute its judgment for the Commissioner's or the ALJ's, even if the evidence weighs against the Commissioner." *Brown*, 192 F.3d, at 496. Conflicts in the evidence are for the ALJ to resolve. *Id.*, and *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir.2000).

Since the ALJ's decision must stand or fall with the reasons set forth therein, as adopted by the Appeals Council, this court finds that there is substantial evidence to support the ALJ's reasons for denying benefits in the instant case, and the applicable legal standards are well applied. *See Newton v. Apfel*, 209 F.3d 448, 454–55 (5th Cir.2000). The Report and Recommendation of the United States Magistrate Judge is vacated and this court's Order now constitutes the determination of the plaintiff's case on appeal. A separate judgment shall be entered by the court.