United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 15, 2003**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 02-30771

_____

BILLY JOE MCCULLER II

        Plaintiff - Appellant

v.

JO ANNE BARNHART, Commissioner of Social Security

        Defendant - Appellee

_____

Appeal from the United States District Court
for the Western District of Louisiana
No. CV 01-2050 LC

_____

Before KING, Chief Judge, DENNIS, Circuit Judge, and LYNN, District Judge.[*]

PER CURIAM:[**]

The plaintiff-appellant appeals the judgment of the district court affirming the final decision of the commissioner of social security denying the plaintiff's application for disability benefits. Because the record contains substantial evidence in

---

[*] United States District Judge Barbara M.G. Lynn of the Northern District of Texas, sitting by designation.

[**] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

support of the denial of benefits, we affirm.

## I.

### PROCEDURAL HISTORY

In September 1998, Billy Joe McCuller, II applied for social security disability benefits. As alleged, he became disabled on March 25, 1998, while performing wellhead maintenance during the course of his employment as an oilfield service technician.[1] After his application was denied at two administrative levels, a hearing before an administrative law judge ("ALJ") was held on December 1, 1999. McCuller was twenty-six years old at the time of this hearing.

On February 23, 2000, the ALJ found that McCuller was capable of performing work of light exertion and was thus not disabled. McCuller appealed this decision, and the appeals council considered additional evidence submitted with McCuller's request for review – namely, a letter from his treating physician, Dr. Bernauer. However, on August 27, 2001, the appeals council denied McCuller's request for review; the decision of the ALJ thus became the final decision of the commissioner of social security (the "Commissioner").

On October 9, 2001, McCuller appealed this decision to the district court. On July 8, 2002, after a <u>de novo</u> review, the

---

[1] McCuller injured his back by falling onto his left side to avoid a 200-pound falling wellhead.

district court accepted the magistrate judge's report and recommendation of May 20, 2002, in which the magistrate judge recommended that the Commissioner's decision be affirmed. McCuller appeals from this judgment.

## II.

## REVIEW OF THE COMMISSIONER'S FINAL DECISION

### A.    Standard of Review

In cases appealing a district court's affirmation of the Commissioner's decision, we review the final decision of the Commissioner, not the decision of the district court. See Cieutat v. Bowen, 824 F.2d 348, 359 (5th Cir. 1987). Our review of the final decision of the Commissioner denying disability benefits, "is limited to determining whether the decision is supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence." Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990) (citation omitted). "Substantial evidence is more than a scintilla and less than a preponderance." Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is appropriate only if there is a "conspicuous absence of credible choices" or "no contrary medical evidence." Haywood v. Sullivan, 888 F.2d 1463, 1466 (5th Cir. 1989); Richardson v. Perales, 402 U.S. 389, 401 (1971) (stating that "substantial evidence" is evidence consisting of "such relevant evidence as a reasonable mind might accept as

3

adequate to support a conclusion"). If supported by substantial evidence, the ALJ's findings in the Commissioner's final decision are conclusive. Id. at 390. We may not reweigh the evidence, try the issues de novo, or substitute our judgment for that of the ALJ. Id.

**B.    Framework for Evaluating Whether a Claimant is Disabled**

The Social Security Act defines disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d)(1)(A) (2000). Title 20 of the Code of Federal Regulations, part 404, sets forth a five-step sequential process the ALJ must follow to evaluate whether the claimant has a disability. 20 C.F.R. § 404.1520(a)-(f) (2003); Muse, 925 F.2d at 789. The claimant bears the burden as to the first four steps. Id. First, a claimant must not be presently working. 20 C.F.R. § 404.1520(b). Second, a claimant must establish that he has an "impairment or combination of impairments which significantly limits [his] physical or mental ability to do basic work activities." Id. § 404.1520(c). Third, to secure a finding of disability without consideration of age, education, and work experience, a claimant must establish that his impairment meets or equals an impairment enumerated in the listing of impairments in the appendix to the regulations. Id. § 404.1520(d). Fourth, a claimant must establish that his impairment prevents him

4

from doing past relevant work. Id. § 404.1520(e). Finally, the burden shifts to the Commissioner to demonstrate that the claimant can perform relevant work. If the Commissioner meets this burden, the claimant must then prove that he cannot in fact perform the work suggested. Id. § 404.1520(f).

## C.    Analysis of the Findings of the ALJ

Following this sequential process, the ALJ, whose findings became the final decision of the Commissioner, found that "the claimant has a severe impairment but retains the residual functional capacity to perform work existing in significant numbers in the national and local economies." In reaching this conclusion, the ALJ made several findings related to each step in the five-step sequential process. McCuller objects to the majority of these findings as not supported by substantial evidence.

*(1)  Objections to the Step 3 Findings of the ALJ*

The Commissioner found at Step 2 that McCuller had medically determinable severe impairments consisting of "herniated discs, status [post] discectomy and fusion at the L3-4 and L4-5 levels and placement of screw fixation due to lumbar instability." However, as to Step 3 of the process, the ALJ determined that the impairments were not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, of the

regulations.[2]  On appeal, McCuller contends that this finding is erroneous because medical evidence, including a letter submitted to the appeals council by Dr. Bernauer, demonstrates that his back impairments met or equaled the impairments listed in section 1.04B of the listed impairments.

Section 1.04B, in relevant part, provides:

Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.  With:
   B.  Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours.

20 C.F.R., Subpt. P., App. 1, § 1.04.

McCuller must provide medical findings that support all of the criteria for the Step 3 equivalent impairment determination. Selders v. Sullivan, 914 F.2d 614, 619 (5th Cir. 1990).  Here, McCuller identifies no medical evidence that he suffered from

---

[2]     The Code section setting forth Step 3 of the process provides, in relevant part:

When your impairment(s) meets or equals a listed impairment in Appendix 1.  If you have an impairment(s) which meets the duration requirement and is listed in Appendix 1 or is equal to a listed impairment(s), we will find you disabled without considering your age, education, and work experience.

20 C.F.R. § 404.1520(d).

6

spinal arachnoiditis, or its equivalent, nor does he cite to any medical evidence demonstrating that he was required to change his posture or position more than once every two hours. Thus, substantial evidence supports the ALJ's finding that McCuller's impairments do not meet or equal this listed impairment.

*(2) Objections to the RFC Determination of the ALJ*

Because McCuller did not meet his burden of establishing that his impairment met or equaled an impairment enumerated in the listing of impairments in the appendix to the regulations, the ALJ was required to make a determination regarding McCuller's residual functional capacity ("RFC") – that is, a determination regarding the range of work activities McCuller can perform despite his impairments when considering objective evidence such as age, education and work experience.[3] As to McCuller's RFC determination, the ALJ states:

> [McCuller] underwent a course of physical therapy and received epidural steroid injections with Dr. James Perry. Although he was referred for another course of

---

[3] The Code section relating to the RFC determination provides, in relevant part:

> Your impairment(s) must prevent you from doing past relevant work. If we cannot make a decision based on your current work activity or on medical facts alone, and you have a severe impairment(s), we then review your residual functional capacity and the physical and mental demands of the work you have done in the past. If you can still do this kind of work, we will find that you are not disabled.

20 C.F.R. § 404.1520(e).

7

physical therapy, Dr. Perry noted in August 1998 that he had not attended same and was visiting another physician, apparently on the recommendation of his attorney. Dr. Perry noted that the new physician had recommended a myelogram, but opined that based on the claimant's MRI and physical examination, neither a myelogram nor surgical treatment was recommended. He further noted that the claimant had been resistant throughout his treatment program and apparently unhappy and, thus, he recommended that he follow-up elsewhere. Also in August 1998, Dr. Dale Bernauer noted that the claimant had a decreased range of motion, but with negative straight leg raises, strong muscles, intact nerve signs and reflexes, and negative x-rays. Nevertheless, after the myelogram was performed, reflecting finding similar to the prior MRI, the claimant underwent a lumbar fusion and discectomy at the L3-4 and L4-5 levels on November 24, 1998.

In March 1999, Dr. Bernauer noted that the claimant was improving, but continued to complain of bilateral leg and low back pain. With only those notations for support, he then opined that the claimant would be unable to work for approximately one year[] from surgery. In May 1999, a CT scan revealed that the view of the L3-4 and L4-5 levels were obscured due to surgical changes, but with an otherwise normal lumbar spine. The following month, an MRI revealed an unremarkable cervical spine. No other significant medical documentation was provide until September 16, 1999, wherein the claimant was diagnosed with lumbar instability and underwent surgery for placement of a pedicle screw fixation with spinal link systems from L3 through L5 levels.
. . .
After carefully considering the entire record in this matter, including the testimony of the claimant . . . I agree with the non-examining state consultant [who found in a RFC assessment form that the claimant was capable of performing a light level of work, with occasional postural limitations] and find the claimant not disabled.

McCuller maintains that the RFC determination by the ALJ that McCuller retained the ability to perform light work with occasional

postural limitations is not supported by substantial evidence.[4]  We disagree.

As stated, on review, we do not inquire as to whether conflicting evidence exists in the record; rather, we probe the record to ensure only that the ALJ's findings are supported by substantial evidence.  See Muse, 925 F.2d at 790 ("The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record.")(quoting Pierre v. Sullivan, 884 F.2d 799, 803 (5th Cir. 1989)).

Here, the ALJ carefully considered all of the evidence before him and found McCuller's testimony and the conclusory opinion of Dr. Bernhauer that McCuller could not work for one year from the date of his surgery to be less than credible in the face of conflicting medical evidence from Dr. Perry.  In these

---

[4]    Light work is defined by the regulations as:

> [L]ifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

9

circumstances, we hold that substantial evidence supports the RFC determination by the ALJ. <u>Masterson v. Barnhart</u>, 309 F.3d 267, 272 (5th Cir. 2002) (stating that the ALJ has the responsibility to resolve questions of credibility and questions arising from conflicting medical opinions).[5]

*(3) Objections to the Step 5 Findings of the ALJ*

Regarding Step 4 in the sequential process, the ALJ agreed with McCuller that McCuller's impairments rendered him unable to perform his past relevant work as an oilfield service technician and oilfield service supervisor. However, regarding the Step 5 determination, the ALJ found that the Commissioner met her burden of demonstrating that McCuller is able to perform a significant number of other jobs existing in the national and local economy pursuant to Rule 202.21 of the Medical-Vocational Guidelines (the

---

[5] McCuller further contends that in making his RFC determination, the ALJ erred in relying on the state consultant's RFC conclusions. In so contending, McCuller maintains that the state consultant's RFC conclusions were made prior to McCuller's second surgery and are thus not reliable. We find this argument unpersuasive. The responsibility for determining a claimant's RFC rests soundly with the ALJ, not the state agency medical consultant. Here, the ALJ considered evidence regarding the alleged condition of McCuller both before and after the second surgery and then made an independent RFC determination based on his observations. McCuller also contends that the ALJ was required to order the government to produce testimony from a medical consultant or expert who had examined McCuller after his second back surgery. However, the ALJ's duty to undertake a full inquiry "'does not require a consultative examination at government expense unless the record establishes that such an examination is necessary to enable the [ALJ] to make the disability decision.'" <u>Pierre</u>, 884 F.2d at 802. On this record, the ALJ did not abuse his discretion in concluding that such an examination was not "necessary."

"Guidelines").[6]  Specifically, the ALJ stated:

> The claimant is presently twenty-six years of age, defined as a younger individual, with a high school education, plus one semester of vocational training in air conditioning and refrigeration.  He testified at the hearing that he spends part of his day playing on the computer and the internet.  Thus, he has at least some computer skills.  Based on the favorable vocational factors of the claimant's young age, education, and work history, the [Guidelines] were consulted.  In promulgating the [Guidelines], administrative notice has been taken of the numbers of unskilled jobs that exist throughout the national economy at various functional levels, with approximately 1,600 unskilled sedentary and light occupations recognized.  Based on the evidence, the aforementioned residual functional capacity and the favorable vocational factor of his age, Rule 202.21 of the Medical-Vocational Guidelines, 20 CFR, Part 404, Subpart P, Appendix 2, would direct a conclusion of "Not disabled."  However, because the record reflects that the claimant may also suffer[] from certain non-exertional limitations, such as the ability to only occasionally perform postural activities, such as kneeling, crouching, crawling or climbing, Rule 202.21 would also need to be

---

[6]    The Code section setting forth Step 5 of the process provides, in relevant part:

> Your impairment(s) must prevent you from doing any other work.
>     (1)   If you cannot do any work you have done in the past because you have a severe impairment(s), we will consider your residual functional capacity and your age, education, and past work experience to see if you can do other work.  If you cannot, we will find you disabled.
>     (2)   If you have only a marginal education, and long work experience (i.e., 35 years or more) where you only did arduous unskilled physical labor, and you can no longer do this kind of work, we use a different rule (see § 404.1562).

20 C.F.R. § 404.1520(f)(1)-(2).

11

applied as a framework.  Based on the entire record, including the claimant's educational background, his apparent computer skills, and his testimony that he had not taken any pain medication in the three weeks prior to the hearing, I find that even when Rule 202.21 is applied as a framework, these non-exertional limitations do not significantly erode the occupational base recognized by the [Guidelines].

McCuller argues that the ALJ erred in making these Step 5 findings based solely on the Guidelines without the benefit of vocational expert testimony.

"Nonexertional limitations" are work limitations, other than strength demands, that affect a claimant's ability to meet the demands of jobs, such as reaching, handling, stooping, crawling, or crouching.  20 C.F.R. § 404.1569a(c)(iv).  Here, the ALJ concluded that McCuller suffered from "certain non-exertional limitations," but determined that "these non-exertional limitations do not significantly erode the occupational base recognized by the [Guidelines]."  Where, as here, the claimant suffers from "non-exertional impairments [that] do not significantly affect [the claimant's] residual functional capacity, the ALJ may rely <u>exclusively</u> on the Guidelines in determining whether there is other work available that the claimant can perform."  <u>Selders</u>, 914 F.2d at 618 (emphasis added).  The ALJ did not err in relying exclusively on the Guidelines.


**III.**

**CONCLUSION**

The judgment of the district court upholding the final decision of the Commissioner is AFFIRMED.