United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 19, 2005**

Charles R. Fulbruge III
Clerk

**REVISED AUGUST 22, 2005
UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 04-11025
_____

ELISA R. GUTIERREZ

Plaintiff-Appellant,

versus

JO ANNE BARNHART; Commissioner of Social Security

Defendant-Appellee.

Appeal from the United States District Court
For the Northern District of Texas, Fort Worth

Before DAVIS and  DENNIS, Circuit Judges, and LEMELLE, District Judge.[*]

IVAN L.R. LEMELLE, District Judge:[**]

Elisa Gutierrez appeals the district court's grant of summary judgment in favor of the

Secretary of Health and Human Services, affirming the denial of her application for benefits under

---

[*] District Judge of the Eastern District of Louisiana, sitting by designation.

[**]Pursuant to 5th Cir.  R.  47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

1

Title II of the Social Security Act ("Act"), 42 U.S.C. § 405(g) (2005). Appellant seeks review of the denial of benefits based on two issues: (1) whether the administrative law judge ("ALJ") possessed "substantial evidence" to determine Gutierrez's residual functioning capacity; and (2) whether the ALJ constructively reopened appellant's prior application for benefits when he admitted medical records from Gutierrez's prior application as background information. For the following reasons, we AFFIRM the decision of the ALJ and the district court.

I. BACKGROUND

Appellant Gutierrez filed an application for disability benefits under Title XVI of the Act on April 4, 2000, alleging an inability to work since September 1996 because of a "failed back." On February 7, 2001, Gutierrez filed an application for a Period of Disability and Disability Insurance Benefits under Title II of the Act. The Administrative Law Judge ("ALJ") held a hearing on both claims on March 18, 2003, and thereafter denied Gutierrez any benefits. The Appeals Council sought judicial review of the ALJ's decision. The Magistrate Judge ruled that the Commissioner's decision is supported by substantial evidence and the district court adopted the Magistrate Judge's Report and Recommendation and entered a final judgment, which Gutierrez now appeals.

A. Job History

Gutierrez has a history of unskilled work. She last worked in 1999 as part-time cashier for a retail store. She worked there part-time from 1998 to 1999. In 1997 and earlier, she had work experience with a laundry service where she stapled claim tickets to clothing. This job permitted her to sit down most of the time, and it required no lifting. Gutierrez has also worked on the assembly line for a food services company that made baked goods; she has also worked as a keno runner in a casino and as a food packer in a warehouse.

2

B. Medical Testimony/Evidence

Gutierrez sustained a work-related shoulder injury in the mid-1990s. X-rays taken in March 1996, however, showed no significant bony or joint abnormalities in her right shoulder and no evidence of fractures or dislocations.

In addition to her shoulder problems, Gutierrez complained of numbness and a tingling sensation in her hands. She was diagnosed with carpel tunnel syndrome in March, 1996, for which she underwent carpel tunnel release surgery on her right hand in August, 1996.

In April, 1997, Gutierrez complained of left arm numbness radiating into her shoulder and chest. In May, 1997, she fell and injured her right leg. In February, 1998, Gutierrez complained of dizziness, hot flashes, and shortness of breath with activity.

In April, 1998, Gutierrez underwent a consultative internal medical evaluation because of complaints related to her carpel tunnel syndrome and pain in her right shoulder and hand. She complained of frequent headaches and neck pain, and reported wheezing and coughing at night. In 1998, she sought care from a chiropractor for her shoulder, and doctor's notes from 1998 indicate that she had a diminished reflex in her left wrist and normal reflex response on the right.

In March, 1999, Raymond Finn, Ph.D., examined Gutierrez. At that time, Gutierrez attended to her own personal hygiene and other needs, such as bathing, cooking, shopping, and driving. Dr. Finn diagnosed her with pain disorder, adjustment disorder with anxiety and borderline intellectual functioning. According to Dr. Finn's assessment, Gutierrez had a "poor" ability in virtually all areas of mental activities related to making occupational adjustments, making performance adjustments,

3

and making personal-social adjustments.[1]

In May of 1999, Gutierrez injured her back and complained of pain radiating into her right leg. Diagnostic studies showed degenerative disk disease and a herniated nucleus pulposus. Gutierrez underwent back surgery for a herniated lumbar disk and degenerative disk disease in October of 1999. During her hospitalization, she was diagnosed with diabetes.

In February, 2000, she was hospitalized for acute asthma. In October, 2000, an examination by Doctor Swanson confirmed diagnoses of back pain related to her surgery and asthma induced by exercise. Notably, however, Doctor Swanson offered no opinion about her ability to perform work-related activities. Doctor Swanson noted that Gutierrez "appeared unable to care for her basic needs due to poor mobility," and reported that she could not sit or stand. She needed assistance getting on the examining table, and appeared severely disabled and unable to perform even basic movements. Swanson diagnosed Gutierrez with a history of herniated disk and failed back surgery, marked spasms, exercise-induced asthma, diabetes, hypertension, and sleep disturbance.

A state agency reviewing physician completed a form in December, 2000, and instructions indicated that Gutierrez cannot lift more than ten pounds and should be seated for about 6 hours in an 8-hour workday. Handwritten comments at the end of the form raise questions as to Gutierrez's credibility because of the significant difference between her exams in February and October of 2000.

---

[1] Specifically, Dr. Finn labeled Gutierrez as "poor"–"ability to function in this area is almost absent-for [sic] the following work-related mental limitations: follow work rules, relate to coworkers, deal with the public, use judgment, deal with work stress, function independently, maintain attention/concentration, understand simple job instructions, and behave in an emotionally stable manner. He rated her "fair"–ability to function in this area is seriously limited but not precluded-in [sic] her: [sic] ability to interact with supervisors, ability to maintain personal appearance, and ability to relate predictably in social situations.

Gutierrez did not see a doctor for any medical treatment from September, 2000 until June, 2002 because the hospital closed, and she had no one to see until the later date. Subsequent medical records from the South Arlington Primary Care Associates for the months of June through September, 2002 show asthmatic symptoms, lumbar disk herniation, and lumbar radiculopathy. She complained of low back pain and numbness that radiated into her left lower extremity and denied any significant shortness of breath. Straight leg raising was positive for right-sided back pain, but there were no other neurological deficits. Studies of her lumbar spine revealed mild degenerative changes at L4-L5, with a central herniation and L5-S1 and a secondary right lateral disk protrusion at that level affecting the nerve spot.

C. ALJ's Determination

At the beginning of her hearing, Gutierrez amended her alleged onset date to February 7, 2001. Because the amended alleged onset date post-dates her date last insured for Title II disability benefits by seven months (she met the disability insured status requirement from July 1997 to June 2000), the ALJ found that Gutierrez effectively withdrew her application for Title II benefits and therefore dismissed her Title II application.

As for Gutierrez's claim for benefits under Title XVI, the ALJ found that Gutierrez has the following:

> "severe" impairments, in that she is status post one-level laminectomy and discectomy with recurrent herniated nucleus pulposus and status post right (non-dominant) carpal tunnel release, she is obese, and she has borderline intellectual functioning and adjustment disorder with anxiety, but she does not have any impairment or combination of impairments that is listed in, or that equals in severity and impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

The ALJ's report finding that Gutierrez was not entitled to disability benefits noted the

5

following:

> Based on the evidence in its entirety, Ms. Gutierrez's allegations concerning her level of pain, subjective complaints, and functional limitations were not entirely credible or reasonably supported by the findings of the objective medical evidence, or inferences therefrom, to the extent that she has alleged the inability to engage in a work activity since February 7, 2001. <u>See</u> 20 C.F.R. § 416.429 and Social Security Ruling 96-7P.

The ALJ continued, explaining that last finding by summarizing the following reasoning:

> I ... note the gross disparity between the findings on physical examinations. As of April 1998, Ms. Gutierrez had tenderness and loss of range of motion in her right shoulder and deficits in her right hand. Prior to back surgery, she had findings consistent with right radiculopathy, but as of February 2000 she had no neurological deficits when admitted for an asthma exacerbation.
>
> Although there is no evidence of intervening trauma between February and October 2000, Ms. Gutierrez complained of significant symptoms and exhibited significant deficits when Dr. Swanson examined her. Those symptoms and deficits cannot be explained and appear to be an anomaly in this case. Altough she reported at that time that she could not walk without crutches, there is no other medical report that indicates that the claimant is using crutches, nor did she appear at the hearing with them. Further, Ms. Gutierrez has no medically determinable impairment that would account for many of the symptoms, for example global weakness, reported to Dr. Swanson or for many of the findings on physical examination. She reported significant weight loss, but there is evidence only of weight gain. When examined in June 2002, Ms. Gutierrez had no focal neurological deficits and straight leg raising was positive only for back pain. She denied significant shortness of breath at that time although later reported shortness of breath with and without activity.
>
> There is no evidence Ms. Gutierrez saw a physician from the September 2000 until June 2002, and she testified she could not remember if she saw a physician during that time. In addition, she refused additional surgery. Her failure to see a physician for such an extended period of time and her refusal for additional surgery certainly contradict her allegations of disabling pain and disability.

The ALJ arrived at the following conclusion:

> ...I have given Ms. Gutierrez the benefit of every doubt in finding that she is somewhat limited in her ability to crouch, lift, carry, sit, stand, and walk due to her history of back and wrist surgery. Given her intellectual level and give Dr. Finn's findings regarding her restriction in memory, concentration, persistence, and pace, I also find that Ms. Gutierrez should perform relatively simple jobs. Thus, some of the claimants' subjective complaints are credible given the objective evidence, but only to the degree that she is limited, not disabled.

After finding Gutierrez's allegations not to be entirely credible, and stating that "updated medical evidence establishes that the claimant has greater capability than previously assessed," (Trans. at 20), the ALJ found that Gutierrez was able to perform a limited range of light work activity that would accommodate her need to avoid more than occasional crouching and her need for jobs with a reasoning development level of one, two, or three as defined in the Dictionary of Occupational Titles ("DOT").[2] The ALJ also found that she was able to perform her past relevant work as a Keno runner and/or laundry ticketer.

II. DISCUSSION

A. Standard of Review

This Court reviews a denial of disability benefits to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. Legget v. Chater, 67 F.3d 558, 564 (5th Cir. 1995). "Substantial evidence" is more than a scintilla, but less than a preponderance. Boyd v. Apfel, 239 F.3d 698, 704 (5th Cir. 2001). We review an ALJ's application of legal standards de novo. Hollis v. Bowen, 837 F.2d 1378, 1382-83 (5th Cir. 1988).

---

[2]The DOT provides the following definitions for reasoning development levels of one, two or three:

> LEVEL 3: Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations.
> LEVEL 2: Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.
> LEVEL 1: Apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.

DICTIONARY OF OCCUPATIONAL TITLES app. C (rev. 4th ed. 1991).

B.  The Act's Five Step Test

The Social Security Act defines a "disability" as a medically determinable physical or mental impairment lasting at least twelve continuous months that prevents the claimant from engaging in substantial gainful activity.  42 U.S.C. § 423(d) (2005); 42 U.S.C. § 1382c(a)(3)(A) (2005); McQueen v. Apfel, 168 F.3d 152, 154 (5th Cir. 1999).

To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520, 416.920 (2005).  First, the claimant must not be presently working at any substantial gainful activity.  Substantial gainful activity is work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. §§ 404.1527, 416.972 (2005).  Second, the claimant must have an impairment or combination of impairments that is severe.  An impairment or combination of impairments is severe if it has more than minimal effect on the claimant's physical or mental ability to do basic work activities.  Id; Stone v. Heckler, 752 F.2d 1099 (5th Cir. 1985).  At the third step, disability will be found if the claimant's impairment or combination of impairments meets or equals an impairment listed in the appendix to the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d) (2005).  Fourth, if disability cannot be found on the basis of claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his or her past relevant work.  Id. at §§ 404.1520(e), 416.920(e) (2005).  Fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functioning capacity, age, education, and past work experience.  Id. at §§ 404.1520(f), 416.920(f) (2005); Crowley v. Apfel, 197 F.3d 194, 197-98 (5th Cir. 1999).

At steps one through four, the burden of proof rests upon the claimant to show he or she is disabled.  If the claimant satisfies this responsibility, the burden shifts to the Commissioner at step five

8

to show that there is other gainful employment the claimant is capable of performing in spite of his or her existing impairments. Crowley, 197 F.3d at 198. If the Commissioner meets his burden, the claimant must then prove that (s)he cannot in fact perform the work suggested. Waters v. Barnhart, 276 F.3d 716, 718 (5th Cir. 2002). Here, the ALJ stopped his analysis at step four after finding that because Gutierrez can return to her past relevant work as a Keno runner and as a laundry ticketer, she is not disabled.

### C. Gutierrez's Residual Functioning Capacity

Gutierrez argues that the ALJ's assessment of her residual functional capacity––an individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis––is not based on substantial evidence. See Social Security Ruling 96-8p; Myers v. Apfel, 238 F.3d 617, 620 (5th Cir. 2001). Each of her arguments is explained below.

#### 1. Improper Rejection of the Medical Opinions of Gutierrez's Doctors

Gutierrez first argues that the ALJ's ruling was not supported by substantial evidence because he rejected the reports and recommendations by Dr. Swanson––that Gutierrez "appeared unable to care for her basic needs due to poor mobility"––as an "anomaly" and rejected the state agency reviewing physician opinion that Gutierrez would need to be seated for 6 hours during an 8-hour workday. Gutierrez also challenges the ALJ's finding that "updated medical evidence establishes that [Gutierrez] has greater capacity than previously assessed." (Trans. at 20).

The administrative review process is conducted in an informal, non-adversarial manner. 20 C.F.R. § 416.1400(b) (2005). At the administrative hearing level, the ALJ is responsible for investigating the facts and developing the arguments both for and against granting benefits. Sims v. Apfel, 530 U.S. 103, 110-11 (2000) (citing Richardson v. Perales, 402 U.S. 389, 400-01 (1971)).

9

"'[O]rdinarily, the opinions, diagnoses, and medical evidence of a treating physician who is familiar with claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability.'" Myers v. Apfel, 238 F.3d 617, 620 (5th Cir. 2001) (quoting Greenspan v. Shalala, 38 F.3d 232, 237 (5th Cir. 1994)). However, medical opinions are not conclusive because it is the ALJ's role to decide the claimant's status. Id. "'Accordingly, when good cause is shown, less weight, little weight, or even no weight may be given to the physician's testimony. The good cause exceptions we have recognized include disregarding statements that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence.'" Id. (quoting Greenspan, 38 F.3d at 237). When a claimant complains of pain, she must produce objective medical evidence of a condition that could be reasonably expected to produce the level of pain and limitations alleged. Harper v. Sullivan, 887 F.2d 92, 96 (5th Cir. 1989). Overall, "'conflicts in the evidence are for the Commissioner and not the courts to resolve.'" Materson v. Barnhart, 309 F.3d 267, 272 (5th Cir. 2002) (quoting Newton v. Apfel, 209 F.3d 448, 452 (5 th Cir. 2000).

Here, the ALJ made an adverse credibility determination based on the following facts: (1) the difference in Gutierrez's symptoms (dramatic decline) between February 2000 and October 2000 despite no intervening trauma (describing Dr. Swanson's evaluation in October, 2000 as an "anomaly"); (2) Gutierrez's use of crutches in October, 2000, but at no other time; (3) Gutierrez's lack of any medically determinable impairment to explain some of her complaints (for example, her "global weakness"); (4) Gutierrez's reported weight loss contradicted by her weight gain over the years reflected in her medical records; (5) Gutierrez's failure to see a doctor between 2000 and 2002; and (6) Gutierrez's refusal to undergo surgery to correct some of her impairments (e.g., to correct

10

her previously failed back surgery); and (7) her own testimony at the hearing that performing the functions of her past relevant work as a keno runner and a laundry ticketer were not difficult despite her limitations.

Additionally, the ALJ found that "Gutierrez has objectively identifiable, medically determinable impairments that reasonably could be expected to produce some of the pain and other symptoms that she alleges." (R.E. Tab 5 at 23). However, the ALJ found that Gutierrez's condition was improving (or at least not worsening) based on the following: (1) Gutierrez's claimed history of a shoulder injury, but her own testimony that she is able to reach overhead to do her own hair; (2) a disparity between medical reports describing tenderness and loss of range of motion in Gutierrez's right shoulder and deficits in her right hand in April of 1998, compared to records from February of 2000 that she had no neurological deficits when she was admitted for an asthma exacerbation. Additionally, the ALJ noted the inconsistency between Gutierrez's claim to be unable to walk and move about without the assistance of crutches with his observation of her when she attended hearings without such assistance. Finally, the ALJ found that because Gutierrez's medical records from June, 2002 "revealed mild degenerative changes[,].... central 'herniation'...[with] no mention of any nerve impingement or stenosis...", they showed that Gutierrez's condition was not as severe as Dr. Swanson had assessed it as being. Accordingly, he gave some of Dr. Swanson's report little weight in the process of resolving the conflicts in evidence within the record.

The ALJ further explained that he "evaluated...information and observations provided by her treating physicians and the consultative physicians..."[3] However, although the ALJ essentially

---

[3]It is notable that the ALJ did not even refer to the state agency reviewing physician's report recommending that Gutierrez be seated for six hours out of an eight-hour workday. 20 C.F.R. § 1527 (d) (2005), however, requires that an ALJ "evaluate every medical opinion [he or

11

rejected part of the medical opinion of Dr. Swanson and the state agency reviewing physician as an "anomaly" without going through the analysis referenced in 20 C.F.R. § 404.1527(d) (2005) ("Evaluating Opinion Evidence"), he found that Gutierrez "is somewhat limited" in her ability to make certain movements.

Thus, it does appear that the ALJ's adverse credibility determination as to Gutierrez's physical condition is supported by substantial evidence considering the specific contradictions in Gutierrez's medical records that the ALJ references. Furthermore, the ALJ correctly found that Ms. Gutierrez's medical records from 2002 did not show physical impairments as severe as those recorded by Dr. Swanson in October of 2000.

The ALJ did not specifically identify, in an exhaustive or exact manner, which impairments formed the basis for the finding that Gutierrez was somewhat limited, but that she also retained the residual functioning capacity to perform her past work as a Keno runner and/or laundry ticketer. The ALJ, however, possessed substantial evidence to form the basis of the determination in the form of adverse credibility determinations and inconsistencies in Gutierrez's medical records.

2. Lack of Physician Statement

she] receive[s]." Instead, after discussing Dr. Swanson's report (the "anomaly"), the ALJ states that "there is no additional medical evidence until June 2002[.]" In fact, the state agency reviewing physician's report recommending that Ms. Gutierrez stay seated for 6 hours out of an 8-hour workday was issued in December, 2000. The ALJ's conclusions, however, seem to take into account some of the findings of this report, at least implicitly. For example, even the state agency reviewing physician's notes at the end of the form state that the "2/00 and 10/00 exams are significantly different bringing into question the claimant's credibility." (Trans. 412). This is the same conclusion that the ALJ reached with regard to Gutierrez's credibility given her differing accounts of pain and periods of medical inaction. The ALJ's additional finding that Gutierrez was able to perform her past relevant work as a both a keno runner and laundry ticketer also seem, at least implicitly, to take into account the limitation that she must remain seated for six hours out of an eight-hour workday. Gutierrez stated at the hearing that she remained seated for the majority of time on both jobs. (Trans. at 65).

12

Gutierrez next argues that the lack of a physician statement detailing her ability to perform work-related activities undermines the ALJ's finding that she could perform a modified level of light work. This Court has held that the absence of a medical source statement about a plaintiff's ability to work does not, by itself, make the record incomplete. Ripley v. Charter, 67 F.3d 552, 557 (5th Cir. 1995). Instead, the salient issue is whether substantial evidence exists in the record to support the ALJ's decision. Id.

Gutierrez argues that ambiguous evidence or an inadequate record triggers an ALJ's duty to conduct an appropriate inquiry, which may be discharged by the following: (1) subpoenaing the claimant's treating physician; (2) submitting written questions to the treating physician; or (3) keeping the record open after the hearing for supplementation of the record with a consultative medical examination that includes an assessment of the claimant's work-related limitations. 20 C.F.R. § 416.1450(d), 416. 912(d)-(f), 416.913(b)(6) (2005).

Gutierrez also argues that the ALJ rejected the recommendations of Dr. Swanson and the state agency reviewing physician from 2000 (the most recent doctors to have made recommendations as to the activities that Gutierrez was physically capable of performing) without requesting a more updated recommendation by a physician as to what Gutierrez was capable of doing. See Ripley, 67 F.3d at 557.

We find, however, that the ALJ's determination of Gutierrez's residual functional capacity is based on substantial evidence even without such a medical opinion. Id. ("In a situation such as the present one where no medical statement has been provided, our inquiry focuses on whether the decision of the ALJ is supported by substantial evidence in the existing record."). In this case, the ALJ made adverse credibility determinations against Gutierrez based on at least six inconsistencies

13

within her medical record and/or testimony. The ALJ also based the determination that she retained a residual functional capacity to perform at least her past relevant work as a Keno runner and/or laundry ticketer on several available pieces of evidence in the record, including her own testimony that she was able to perform certain tasks despite having claimed serious shoulder impairment.[4] Accordingly, we find no error.

Furthermore, this Court has generally held that to obtain reversal for an ALJ's failure to fully develop the record, a plaintiff must demonstrate prejudice.[5] Brock v. Chater, 84 F.3d 726, 737 (5th Cir. 1996) (explaining that plaintiff must "show that [s]he 'could and would have adduced evidence that might have altered the result'") (quoting Kane v. Heckler, 731 F.2d 1216, 1220 (5th Cir. 1984)). The ALJ's decision not to order a consultative examination is discretionary, and the ALJ in this case had sufficient evidentiary bases for rendering the determination without such an examination. Jones v. Bowen, 829 F.2d 524, 526 (5th Cir. 1987) ("The decision to require such an examination is discretionary....' [T]o be very clear, 'full inquiry' does not require a consultative examination at

[4]The ALJ asked Gutierrez "[w]hat was the hardest thing about th[e Keno Runner] job?" She responded, "Nothing." (Trans. at 65).

[5]The Court in Ripley v. Chater, 67 F.3d 552, 557 (5th Cir. 1995), did hold that the claimant must show that (s)he is prejudiced by the ALJ's exclusion of certain evidence. The Court, without discussing the prejudice requirement, however, remanded the case to the ALJ to "obtain a report from a treating physician regarding the effects of [the claimant's] back condition on his ability to work," and did not discuss the prejudice requirement. Gutierrez might have, but did not, make the argument that a lesser showing than prejudice is required for a similar result here. Even assuming, without so holding, that argument to be true, we would reject Gutierrez's argument. Here, unlike the ALJ in Ripley, the court finds that the ALJ had substantial evidence from both lay and medical sources with which to fully and fairly develop the record without having to obtain a report from a treating physician. The ALJ possessed evidence to fully and fairly develop the record given the noted inconsistencies between Gutierrez's testimony and the medical reports obtained and her own testimony reflecting her abilities to conduct daily tasks. The ALJ also possessed evidence indicating the lack of any neurological deficits to explain certain alleged medical symptoms relating to Gutierrez's claim of disability.

government expense unless the record establishes that such an examination is <u>necessary</u> to enable the administrative law judge to make the disability decision.'"). Here, Gutierrez makes no argument that she was prejudiced by the lack of a physician statement detailing her ability to perform work-related activities. The ALJ based the disability determination on Gutierrez's own testimony about her daily capabilities, his observations of her during the hearing, and medical evidence that demonstrated improvement in certain conditions rather than further degeneration. In this case, the court determines that "the evidence in the record upon which the [ALJ] based his denial of benefits fully developed the facts necessary to make that determination." <u>Turner v. Califano</u>, 563 F.2d 669, 671 (5th Cir. 1977).

### D. <u>Gutierrez's Mental Abilities</u>

Gutierrez challenges the ALJ's conclusion that she can "perform jobs with a reasoning developmental level of one, two, or three" based on the ALJ's finding that Gutierrez was "mildly restricted in her activities of daily living, had mild difficulty maintaining social functioning, and experienced moderate deficiencies in concentration, persistence or pace."

Gutierrez argues that the ALJ erred by stopping his analysis at the four functional levels, 20 C.F.R. § 416.920a (2005),[6] and not completing the analysis by further analyzing whether Gutierrez's mental problems affected her ability to perform the "basic work activities" listed in § 416.921.[7]

---

[6]Section 416.920a(c)(3) ("Evaluation of mental impairments") identifies four broad functional areas in which an ALJ should rate the degree of a claimant's functional limitations. Those are the following: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. Section 416.920a further explains that

> [I]f we rate the degree of your limitation in the first three functional areas as "none" or "mild" and "none" in the fourth area, we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities (see § 416.921).

20 C.F.R. § 416.920a (2005).

[7]The "basic work activities" to which Gutierrez refers are the four mental activities generally required by competitive, remunerative, unskilled work: (1) understanding, remembering,

15

Gutierrez also argues that Social Security Rule 96-9p supports her argument that her mental capabilities combined with a doctor's recommendation that she only perform sedentary work warrant a finding that she is disabled.[8]

Gutierrez relies on her medical records based on the examination by Dr. Finn for this argument and asserts that the ALJ improperly ignored his report. *See* Part I.2, supra; See also note 1, supra (recounting Dr. Finn's evaluations). Gutierrez essentially would have the Court re-weigh Dr. Finn's evaluation versus the ALJ's finding that her alleged disability was not credible given the record's inconsistencies with certain evaluations made by Dr. Finn. At oral argument, it was even suggested that Dr. Finn's report finding borderline intellectual functioning explains why the ALJ may have mistakenly made an adverse credibility determination against Gutierrez. The Court, as it did at oral argument, declines to substitute its credibility determination for the ALJ's or to re-weigh the evidence in the record, already fully developed by the ALJ.

After reviewing Gutierrez's medical records, the ALJ rated her on the four functional areas contained in § 416.920a(c)(3), stating that "Ms. Gutierrez's mental impairments have mildly restricted her activities of daily living, have created mild difficulties in maintaining social functioning, have

and carrying out simple instructions; (2) making judgments that are commensurate with the functions of unskilled work-–i.e., simple work-related decisions; (3) responding appropriately to supervision, coworkers and usual work situations; and (4) dealing with changes in a routine work setting. 20 C.F.R. § 416.921(b) (2005).

[8]Social Security Rule 96-9p states the following:
Mental limitations or restrictions: A substantial loss of ability to meet any one of several basic work-related activities on a sustained basis (i.e., 8 hours a day, 5 days a week, or an equivalent work schedule), will substantially erode the unskilled sedentary occupational base and would justify a finding of disability.
Soc. Sec. R. 96-9p (issued July 2, 1996), available at WESTLAW, 1996 WL 374185.

resulted in moderate deficiencies of concentration, persistence, or pace, and have never resulted in episodes of decompensation." From there, the ALJ concluded that Gutierrez was able to perform "jobs with a reasoning development level of one, two, or three (as defined in the <u>DOT</u>)."[9] (Appellant's R.E. Tab 5, at 25).

First, the court easily disposes of Gutierrez's argument that Social Security Rule 96-9p demonstrates that the ALJ erred in not finding Gutierrez disabled. Gutierrez's argument is meritless because Social Security Rule 96-9p states that decreased mental capacity <u>combined</u> with a sedentary recommendation would warrant a finding of disability. Here, because the ALJ did not find that Gutierrez was limited to sedentary work, Social Security Rule 96-9p's recommendation is not controlling. Furthermore, Social Security Rule 96-9p applies during the fifth (and final) step of an ALJ's analysis, which the ALJ only undertakes <u>after</u> finding that the claimant <u>cannot</u> perform "past relevant work."[10] The ALJ determined that Gutierrez was able to perform past relevant work and did not have to progress to the next step. Therefore, Gutierrez's argument that Social Security Rule 96-9p establishes that she is disabled fails.

Gutierrez's second argument is equally unsuccessful. She argues that the ALJ did an incomplete analysis of her mental limitations and did not rely on Dr. Finn's medical opinion. Gutierrez argues that the ALJ did an incomplete analysis of her mental functioning by only addressing the factors listed in § 416.920a(c)(3) and not the factors contained in § 416.920(b) describing "basic

---

[9]*See* note 2, <u>supra</u> (outlining the <u>DOT</u> developmental levels).

[10]Soc. Sec. R. 96-9p, note 7, <u>supra</u> (explaining in the introduction that "[u]nder the sequential evaluation process, <u>once</u> it has been determined that an individual is not engaging in substantial gainful activity and has a 'severe' medically determinable impairment(s) which...prevents the individual from performing past relevant work, it must be determined whether the individual can do any other work").

work activities." Gutierrez, however, misconstrues the relationship between § 416.920a and § 416.921. Section 416.920a is the more specific of the two provisions and outlines the specific analysis an ALJ must perform to evaluate a claimant's mental impairments. Section 416.921, on the other hand, is a more general provision that instructs the ALJ how to determine whether a claimant's mental impairment is "severe." A claimant is not entitled to Social Security diability benefits merely upon a showing that (s)he has a severe disability. Rather, the disability must make it so that the claimant cannot work to entitle the claimant to disability benefits. It is not inconsistent, therefore, for the ALJ to accept Dr. Finn's medical opinion and find that Gutierrez's mental impairment was "severe," but nonetheless find that Gutierrez could perform past relevant work.

The ALJ, in fact, found exactly that. First, the ALJ found that Gutierrez has a "severe" impairment in her "borderline intellectual functioning." (Appellants R.E., at Tab 5, at 20). The ALJ based this finding on Dr. Finn's medical opinion and records, which analyzed Gutierrez's mental functioning based on the "basic work activities" listed in § 416.921(b). However, based on her past work experience and the absence in the record of evidence of mental deterioration since Dr. Finn's evaluation (it is notable that Gutierrez was working as a cashier at or around the time Dr. Finn evaluated her in 1999), the ALJ found that Gutierrez had the mental capacity to perform her past relevant work.

The court, therefore, upholds the ALJ's determination because the ALJ properly applied §§ 416.920a(c)(3) and 416.921 and because the determination was based on substantial evidence considering Dr. Finn's opinion and Gutierrez's work experience.

E. The ALJ's Alleged "Constructive Reopening" of Gutierrez's Prior Application for Benefits

Gutierrez next contests the ALJ's dismissal of Gutierrez's application for disability insurance benefits under Title II. The ALJ dismissed Gutierrez's Title II claim after she amended her onset date

18

to February 2001, seven months after her insured status expired, and treated her amendment as a withdrawal of her application for disability insurance benefits.

Gutierrez first met the disability insured status requirements of the Act on July 1, 1997, and she last met those requirements on June 30, 2000. Her amendment of the alleged onset date to February 7, 2001 constitutes a withdrawal of the Title II applications, which the ALJ dismissed. Acosta v. Barnhart, 86 Soc. Sec. Rep. Serv. 633, 2003 U.S. Dist. LEXIS 5998, 2003 WL 1877228, at *6 (S.D.N.Y. 2003).

Gutierrez argues that because the ALJ admitted evidence associated with an earlier unsuccessful application she had made for disability benefits (dated February 2, 1998) "unwittingly re-opened" her earlier application and this court must consider February 2, 1998 to be her onset date. Gutierrez, therefore, argues that she is entitled to disability benefits under Title II because her special disability insured status (required for a Title II claim) did not expire until June 30, 2003.

She argues that "a new application which alleges the same onset date and same impairments as an earlier application is an implied request for re-opening." Lewis v. Apfel, 236 F.3d 503, 510 (9th Cir. 2001). Here, Gutierrez filed her prior application on February 2, 1998, which was initially denied in June of 1998, denied reconsideration in September, 1998, and denied hearing decision on July 29, 1999. She filed her current application on April 4, 2000, and again alleged an onset date of disability in September of 1996. However, she later amended her alleged onset date to February 7, 2001. Gutierrez essentially argues that because the ALJ considered Dr. Finn's evaluation of Gutierrez from 1999 as "background" that became her alleged onset date despite the ALJ's and the parties' explicit discussion to the contrary at Gutierrez's hearing. See Appellants R.E. Tab 5 at 56 ALJ ("Now I have in front of me both the current file and the prior file, which obviously pre-dates the alleges [sic] onset date, but gives me some background information. And I intend to admit both of these files.").

Gutierrez cannot cite any case law which states that merely examining evidence from a prior application constitutes a constructive re-opening despite the explicit statements of all of the parties to the contrary at the time the evidence was examined. We find that Gutierrez's argument has no merit.[11] Accordingly, the ALJ correctly rejected Gutierrez's claim under Title II.

III. CONCLUSION

For the reasons set forth above, we AFFIRM the decision of the District Court.

---

[11]The court notes that at least one other Circuit has determined that "[m]ere consideration of evidence from an earlier application is not considered a reopening of an earlier claim." King v. Chater, 50 F.3d 323, 325 (8th Cir. 1996).