United States Court of Appeals,

Fifth Circuit.

No. 94-11099

Summary Calendar.

Travis RIPLEY, Plaintiff-Appellant,

v.

Shirley S. CHATER, Commissioner of Social Security, Defendant-Appellee.

Oct. 30, 1995.

Appeal from the United States District Court for the Northern District of Texas.

Before WISDOM, JOLLY and JONES, Circuit Judges.

WISDOM, Circuit Judge.

Travis Ripley appeals from the district court's grant of summary judgment which upheld the Secretary's denial of Social Security disability benefits. Because there is new, material evidence relating to Ripley's disability claim and the decision of the administrative law judge is not supported by substantial evidence, we reverse and remand to the district court with instructions that this case be sent back to the administrative level for additional proceedings.

I.

A. Procedural History

Travis Ripley, the appellant, has been complaining of back pain since 1988. On December 6, 1991, Ripley filed an application for Title II Social Security disability benefits for a period

beginning on July 1, 1988.[1]  The state agency and the Social Security Administration denied his application and his request for reconsideration.  On November 5, 1992, a hearing was held, at Ripley's request, before an administrative law judge (ALJ).  On December 16, 1992, the ALJ found that Ripley was not disabled.  After the Appeal's Council refused his request for review, Ripley filed a complaint seeking review of the ALJ's decision in the United States District Court for the Northern District of Texas under 42 U.S.C. § 405(g).  On September 13, 1994, after reviewing the magistrate's recommendation, the district court granted summary judgment in favor of the Commissioner, upholding the denial of disability benefits.  Ripley appeals.

B. Factual/Medical History

Travis Ripley injured his back while building a shed.[2]  After the injury, Ripley began making frequent trips to the Olin E. Teague VA Medical Center complaining of back pain which radiated down his right leg and numbness in the sole of his right foot.  The pain allegedly increased with sitting or standing.[3]  The results of a CT scan revealed that Ripley had a herniated L5-S1 disc with compression of the right S1 nerve root.  On September 30, 1988, Dr.

---

[1]According to the record, Ripley's eligibility for Title II disabilities benefits ended on December 31, 1992.

[2]Before this injury, Travis Ripley was employed as a telephone installer/repairman, a job requiring bending, lifting, and carrying heavy objects.  Since the accident, Ripley has not returned to work.

[3]The report noted that Ripley had been unable to sit due to the pain.

2

Kirby Hitt, an orthopedic surgeon, performed a partial hemilaminectomy and a discectomy at L5-S1, with a partial right medial facetectomy on Ripley. At the time of his discharge, Ripley was able to move freely, but he reported numbness over his right fifth toe.

Ripley returned to the VA clinic on many occasions after his surgery. Initial reports indicated that his condition was improving. But later, Ripley complained about the pain and numbness returning. The medications and physical therapy were not relieving his symptoms. On April 23, 1990, Dr. Clark took x-rays of Ripley's back which revealed that "the lumbosacral disc space is questionably narrowed today whereas it appeared normal previously" and that there were signs of "questionable degenerative disc disease at the lumbosacral level". On May 31, 1990, X-rays showed a mild retrolisthesis at L5 on S1, but were otherwise negative. On November 29, 1990, Ripley was diagnosed with chronic lower back pain after his condition had not improved. A second CT scan, taken on August 16, 1991, indicated, according to the record, that Ripley had "a herniated disc centrally and to the right which encroaches upon the fecal [sic] sac." The possibility of a second surgery was raised.

On November 7, Ripley received caudal block injections which relieved some of his back pain, but not all of his other symptoms. The doctor testified concluded that Ripley was suffering from a recurrent herniated disc, and scheduled an appointment with Ripley to discuss the possibility of additional surgery.

3

On December 11, 1991, Ripley was sent for more physical therapy where he was taught back strengthening exercises. X-rays were also taken which revealed a mild narrowing of the L5-S1 disc space, but no significant change in his condition.

On July 29, 1992, Ripley returned to the clinic complaining of pain which resulted from sitting or standing. A myelogram revealed a "mild anterior extradural impression on thecal sac at L4-L5 consistent with mild bulging of L4-L5 disc ... No definite evidence of encroachment upon nerve roots at L4-L5 or L5-S1 noted". The post-myelogram CT scan indicated that there is a small herniated nucleus pulpous at L4-L5, but no encroachment upon the thecal sac.

At his hearing on November 5, 1992, Ripley testified that he is unable to do most of the work around his house because he cannot sit or stand for more than thirty or forty minutes at a time. In addition, he can sleep only for three to four hours a night. Ripley also testified that he participates in limited outside activities. He attends church on Sundays, but is unable to sit through the entire service. He is able to drive or ride in a car, but only for short periods of time.[4] Despite his complaints, the ALJ denied Ripley's claim for disability.

In October 1993, after the Appeals Council refused to review Ripley's claim, MRI studies revealed that Ripley had a central and right herniated disc at the L5-S1 which affected the L5 nerve root

---

[4]On the way to the hearing, Ripley had to ride in the back of a station wagon because he was unable to sit for the entire eight-three mile trip.

4

and may have affected the S1 nerve root. On February 2, 1994, Ripley underwent additional surgery.[5] The operation revealed the presence of significant scar tissue from the original L5-S1 discectomy on the right and scarring of the nerve root to the lateral wall of the canal. Despite this new evidence, the district court denied Ripley's claim by granting summary judgment in favor of the Commissioner on September 13, 1994.

## II.

On appeal, Ripley raises three issues. First, Ripley argues that the district court erred in refusing to remand this case to the administrative level so that new medical evidence could be considered. Second, Ripley argues that the ALJ used an improper legal standard in evaluating his subjective complaints of pain. Finally, Ripley maintains that the ALJ failed to fulfill his duty to develop the record fully and fairly in relation to Ripley's ability to perform substantially gainful work.

Our review of the Secretary's decision is limited to determining whether that decision is supported by substantial evidence and whether the proper legal standards were applied.[6] "Substantial evidence is such relevant evidence as a reasonable

---

[5]The doctors performed an L-5 right laminectomy, L4-L5 discectomy, posterolateral fusion and a posterior iliac crest bone graft.

[6]*Greenspan v. Shalala,* 38 F.3d 232, 236 (5th Cir.1994), *cert. denied* --- U.S. ----, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995).

mind might accept to support a conclusion."[7]  It is "more than a mere scintilla and less than a preponderance".[8]  Any findings of fact by the Secretary which are supported by substantial evidence are conclusive.[9]  In our review, we do not reweigh the evidence nor do we substitute our judgment for that of the Secretary.[10]

## A.

First, Ripley argues that the district court should have remanded his case to the administrative level because of the new evidence obtained from his second surgery.  We agree.  When new evidence becomes available after the Secretary's decision and there is a reasonable probability that the new evidence would change the outcome of the decision, a remand is appropriate so that this new evidence can be considered.[11]  To justify a remand, 42 U.S.C. § 405(g) requires that the evidence is "new" and "material" as well as a showing of "good cause" for failing to provide this evidence at the original proceedings.[12]  We review new evidence only to determine if a remand is appropriate.[13]

---

[7]*Id.* (citing *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)).

[8]*Spellman v. Shalala,* 1 F.3d 357, 360 (5th Cir.1993).

[9]42 U.S.C. § 405(g).

[10]*Id.;  Haywood v. Sullivan,* 888 F.2d 1463, 1466 (5th Cir.1989).

[11]42 U.S.C. § 405(g);  *Latham v. Shalala,* 36 F.3d 482, 483 (5th Cir.1994).

[12]*See Pierre v. Sullivan,* 884 F.2d 799, 803 (5th Cir.1989).

[13]*Haywood,* 888 F.2d at 1471.

6

In this case, all parties have agreed that the evidence of scarring from Ripley's initial surgery is new. This information was not known until Ripley had his second back operation, after the ALJ had made his decision.

Reviewing the materiality of new evidence requires us to make two separate inquiries: (1) whether the evidence relates to the time period for which the disability benefits were denied, and (2) whether there is a reasonable probability that this new evidence would change the outcome of the Secretary's decision.[14] The new evidence in this case meets both criteria.

The evidence of scar tissue obtained during the second surgery relates to the period for which disability benefits are sought. This tissue resulted from the initial surgery, in 1988, and was not a condition which developed after the ALJ's decision. Therefore, any consequences resulting from its presence are material.

We also find that there is a reasonable probability that this new evidence would have affected the outcome of the Secretary's decision. In finding that Ripley was not disabled, the ALJ rejected Ripley's subjective complaints of pain because of a lack of objective medical testimony to substantiate his complaints. It seems to us that the new evidence provides an objective basis for

---

[14]*Latham,* 36 F.3d at 483; *Haywood,* 888 F.2d at 1471; *Bradley v. Bowen,* 809 F.2d 1054, 1057-8 (5th Cir.1987). Evidence is not material if it relates to a disability or to the deterioration of a previously non-disabling condition resulting after the period for which benefits are sought. *Falco v. Shalala,* 27 F.3d 160, 164 (5th Cir.1994); *Haywood,* 888 F.2d at 1471.

Ripley's subjective complaints; on the basis of that evidence, the ALJ could have found that Ripley was suffering from a disabling condition. We conclude, therefore, that this new evidence is material to the determination of Ripley's disability claim.

Finally, there is good cause for the failure to include this evidence in the initial proceedings. Although evidence obtained after the ALJ's decision does not automatically satisfy the good cause requirement just because of its recent origin,[15] Ripley had a legitimate reason why this evidence was not produced earlier. Major medical procedures such as back surgery are not entered into lightly. Ripley's complaints of pain had to be examined and evaluated to determine what medical treatment was best for Ripley. Ripley could not just walk into the hospital and receive back surgery on demand. Although back surgery had been suggested on two occasions before the ALJ's decision, the ultimate judgment as to whether back surgery was necessary and when it should be performed rested with the treating physicians. In 1994, after the ALJ had denied Ripley's disability claim, Ripley's doctor felt that the surgery was necessary. Because the qualified judgment of Ripley's doctors was responsible for the delay in the availability of evidence relating to the scar tissue, we conclude that Ripley has demonstrated good cause for failing to produce this evidence during the initial hearings.

The new evidence in this case seems to meet all of the criteria of 42 U.S.C. § 405(g). We reverse the district court's

_____

[15]*Pierre,* 884 F.2d at 803.

grant of summary judgment, and remand with directions that the case be sent back to the administrative level for additional proceedings to consider the new evidence. In addition, Ripley's subjective complaints of pain should be reevaluated because there is a new, objective basis that could support his statements.

B.

Ripley's next argument is that the ALJ used an improper legal standard in reviewing his subjective complaints of pain. To prove disability resulting from pain, an individual must establish a medically determinable impairment that is capable of producing disabling pain.[16] Once a medical impairment is established, the subjective complaints of pain must be considered along with the medical evidence in determining the individual's work capacity.[17] Ripley argues that he is entitled to a remand because the ALJ did not follow this two-step process. We disagree.

The ALJ found that there was no medical impairment capable of producing the alleged pain.[18] Because the first inquiry was answered in the negative, the ALJ was not required to proceed to the second. Therefore, we conclude that Ripley has not established

---

[16]56 Fed.Reg. 57928 (Nov. 14, 1991); 20 C.F.R. § 404.1529 (1994).

[17]56 Fed.Reg. 57928; 20 C.F.R. § 404.1529.

[18]The ALJ found that "[t]he claimant's allegations of pain and other disabling symptoms are not substantiated by the medical evidence to the extent alleged and are not sufficiently credible to support a finding of disability". Record Vol. 2 at 30.

that the ALJ failed to apply the proper legal test.[19]

                                    C.

Finally, Ripley argues that the ALJ failed to develop the record fully and fairly when he concluded that Ripley was capable of performing sedentary work, even though there was no medical testimony supporting this conclusion.  We agree with Ripley that the ALJ's conclusion was not supported by substantial evidence.

The ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits.[20]  If the ALJ does not satisfy his duty, his decision is not substantially justified.[21]  Reversal of his decision, however, is appropriate only if the applicant shows that he was prejudiced.[22]

Usually, the ALJ should request a medical source statement describing the types of work that the applicant is still capable of performing.[23]  The absence of such a statement, however, does not,

---

[19]At this point, our review of the ALJ's findings is only to determine if the ALJ followed the proper legal procedures.  We are not commenting on whether the findings are supported by substantial evidence.

[20]*Pierre,* 884 F.2d at 802;  *Kane v. Heckler,* 731 F.2d 1216, 1219 (5th Cir.1984).

[21]*Kane,* 731 F.2d at 1219.

[22]*Id.* at 1220.  Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision.  *Id.*

[23]The medical reports that are reviewed during the administrative hearings should include "[a] statement about what you can still do despite your impairment(s) based upon the medical source's findings".  20 C.F.R. § 404.1513(b)(6) (1994).

in itself, make the record incomplete.[24]  In a situation such as the present one, where no medical statement has been provided, our inquiry focuses upon whether the decision of the ALJ is supported by substantial evidence in the existing record.

The evidence that was available for review by the ALJ shows a four year history of surgery, medical examinations, and complaints of pain.  From this evidence and Ripley's testimony at trial, the ALJ concluded that Ripley was capable of performing sedentary work.[25]  Based upon that finding, the ALJ applied the Medical-Vocational Guidelines and concluded that Ripley was not disabled.

The ALJ is responsible for determining an applicant's residual functional capacity.[26]  After considering the evidence, however, we conclude that the ALJ's determination that Ripley was capable of performing sedentary work was not supported by substantial evidence.  The record includes a vast amount of medical evidence establishing that Ripley has a problem with his back.  What the record does not clearly establish is the effect Ripley's condition

---

[24]"Although we will request a medical source statement about what you can still do despite your impairment(s), the lack of a medical source statement will not make the report incomplete." *Id.*

[25]Sedentary work involves sitting for about six hours out of an eight hour work day and occasionally lifting items weighing no more than 10 pounds.  *Lawler v. Heckler,* 761 F.2d 195, 197-8 (5th Cir.1985).  *See also* 20 C.F.R. § 404.1567(a) (1994).  Having to alternate between sitting and standing in order to work the entire day does not fit within the definition of sedentary work. *Scott v. Shalala,* 30 F.3d 33, 34 (5th Cir.1994).

[26]20 C.F.R. § 404.1546 (1994).

had on his ability to work.[27]  The only evidence regarding Ripley's ability to work came from Ripley's own testimony.[28]  Therefore, on remand, we instruct the ALJ to obtain a report from a treating physician regarding the effects of Ripley's back condition upon his ability to work.[29]

## III.

In sum, we REVERSE the grant of summary judgment and REMAND this case to the district court with instructions that this case should be sent back to the administrative level for additional proceedings.  In these additional proceedings, the new evidence from Ripley's 1994 surgery should be considered, Ripley's

---

[27]The Commissioner argues that the medical evidence substantially supports the ALJ's conclusion.  In making this argument, the Commissioner points to reports discussing the extent of Ripley's injuries.  Without reports from qualified medical experts, however, we cannot agree that the evidence substantially supports the conclusion that Ripley was not disabled because we are unable to determine the effects of Ripley's conditions, no matter how "small", on his ability to perform sedentary work.

[28]Ripley testified that he was unable to sit or stand for any length of time without experiencing a great deal of pain.  The ALJ concluded that Ripley was capable of sitting for six hours of a work day because Ripley admitted that he went to church, rode in a car for an hour and a half to attend the hearing, and occasionally drove.  Record, Volume 2 at 28 and 30.  What the ALJ failed to consider was Ripley's testimony regarding limitations in performing these tasks.  Ripley admitted that he could not sit through an entire church service, that he had to lie down in the back of a station wagon on the way to the hearing, and that he would occasionally drive for short distances only.

[29]*See* 20 C.F.R. § 404.1527(c)(3) (1994) (requiring the recontacting of the treating physicians to obtain additional information regarding an applicant's ability to work when the record is insufficient to make a determination of whether an applicant is disabled).

subjective complaints of pain should be reevaluated, and a report regarding the impact of Ripley's condition upon his ability to work should be obtained from a treating physician and should be reviewed before a determination of Ripley's eligibility for disability benefits is determined.