Barbara J. ODERBERT

v.

Jo Anne B. BARNHART, Commissioner of Social Security Administration

No. 1:04 CV 566.

United States District Court, E.D. Texas, Beaumont Division.

Jan. 20, 2006.

Robert C. Hardy, Sr., Houston, TX, for Plaintiff.

Gregory E. White, Dallas, TX, for Defendant.

## MEMORANDUM OPINION ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

CRONE, District Judge.

The Court heretofore ordered that this matter be referred to the Honorable Earl S. Hines, United States Magistrate Judge, for consideration pursuant to applicable law and orders of this Court. The Court has received and considered the Report of the United States Magistrate Judge pursuant to such order, along with the record, pleadings and all available evidence. No objections to the Report of the United States Magistrate Judge were filed by the parties.

Accordingly, the findings of fact and conclusions of law of the United States Magistrate Judge are correct, and the Report of the United States Magistrate Judge is **ADOPTED**. A Final Judgment will be entered separately, affirming the decision of the Commissioner and dismissing this action.

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

HINES, United States Magistrate Judge.

This case is referred to the undersigned United States Magistrate Judge for review, hearing if necessary, and submission of a report with recommended findings of fact and conclusions of law. *See* 28 U.S.C. § 636(b)(1)(B) (2001) and Loc. R. CV–72 & App. B, R.1 (H) for the Assignment of Duties to United States Magistrate Judges; *see also* Beaumont General Order 04–02.

## I. NATURE OF THE CASE

Plaintiff seeks judicial review of the Commissioner of Social Security Administration's decision denying her application for Supplemental Security Income benefits (SSI).[1] United States district courts may review such decisions. 42 U.S.C. § 405 (2003).

## II. PROCEEDINGS

Plaintiff applied for SSI on March 25, 2003 (Tr. 36–38), claiming disability due to pain in her back and neck (Tr. 41) resulting from automobile accidents (Tr. 94, 102, 126) Following initial denial of her claim, plaintiff requested a hearing before an administrative law judge (ALJ) (Tr. 20). Her claim was assigned to ALJ Gerald L. Meyer who convened an evidentiary hearing on April 6, 2004, at which plaintiff appeared represented by attorney Weston Cotton, Esq.

ALJ Meyer received direct testimony from plaintiff and a vocational expert,[2]

---

1. Supplemental Security Income (SSI) benefits are authorized by Title XVI of the Social Security Act, and are funded by general tax revenues. *See* SOCIAL SECURITY ADMINISTRATION, SOCIAL SECURITY HANDBOOK, § 2100 (14th ed.2001), *available at* http://www.ssa.gov/OP_Home/hand book. Eligibility for SSI is based upon proof of *indigence* and *disability*. H.R. REP. No. 92–231, (1972), reprinted in 1972 U.S.C.C.A.N. 4989, 5132–5133. See also 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)-(C) (1992 & Supp.2002) The SSI program is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line.

2. Vocational Experts are utilized by the ALJ to determine complex issues, such as whether a claimant's "work skills can be used in other work and the specific occupations in which they can be used." 20 C.F.R. § 416.966(e) (2005). The VE's testimony must: (1) assess the effect of any limitation on the range of

(VE) Kay Gilreath. The remaining evidentiary record consisted of reports from treating sources; and a "Residual Functional Capacity Assessment" completed by Dr. Robert N. Barnes, M.D. a medical consultant [3] who reviewed plaintiff's medical records upon request of Texas Department of Disability Determinations.

## III. THE ADMINISTRATIVE DECISION

ALJ Meyer concluded that plaintiff has residual functional capacity for light work with certain limitations. Based on vocational testimony, he found that with that capacity, plaintiff can work as a cashier, small products assembler, and mail clerk. Tr. 18, Finding 11. He also found that each such job exists in significant numbers in the national economy. Tr. 17. He therefore found that plaintiff "was not under a 'disability,' as defined in the Social Security Act, at any time through the date of this decision" (Tr. 18, Finding 12), and "is not eligible for Supplemental Security Income payments" (Tr. 19).

work at issue; (2) advise whether the impaired person's residual functional capacity permits him or her to perform substantial numbers of occupations within the range of work at issue; and, (3) identify jobs if they exist and provide a statement of the incidence of such jobs in the region in which the person lives. *See Ellison v. Sullivan*, 921 F.2d 816, 821 (8th Cir.1990).

3. "A medical consultant is a person who is a member of a team that makes disability determinations in a State agency, as explained in § 404.1615, or who is a member of a team that makes disability determinations for us when we make disability determinations ourselves." 20 C.F.R. § 404.1616(a)(2005). A medical consultant must be "a licensed physician (medical or osteopathic), a licensed optometrist, a licensed podiatrist, or a qualified speech-language pathologist.... [and] must meet any appropriate qualifications for his or her specialty as explained in § 404.1513(a)." 20 C.F.R. § 404.1616(b) (2004).

## IV. POINTS OF ERROR AND COMMISSIONER'S RESPONSE

During this litigation, plaintiff first appeared *pro se*. Thereafter, she employed counsel, Louis Salmon, Esq., who was succeeded by substitute counsel, Robert C. Hardy, Esq. Both lawyers filed briefs in plaintiff's behalf. Docket Nos. 13 and 21. Both briefs were titled "Plaintiff's Brief in Support of Request for Judicial Review." Each raised the same basic point of error.[4]

Essentially, plaintiff argues that the Commissioner's decision is not supported by substantial evidence because the evidentiary record lacks a residual functional capacity assessment performed by a *treating* or *examining* physician. Plaintiff argues that *Ripley v. Chater*, 67 F.3d 552, (5th Cir.1995) established a circuit rule that a residual functional capacity assessment must be supported by *treating* physician's report. Plaintiff argues that a prior decision of this court, *Browning v. Barnhart*, No. 1:01–CV–637, 2003 WL 1831112,

4. In her original brief, plaintiff identified the issue as follows:
"Whether the finding with respect to the plaintiff's residual functional capacity is supported by substantial evidence when the administrative law judge failed to base this finding either on a credible medical opinion from a treating or examining source or on reasonable inferences drawn from other evidence in the record establishing the limiting effects of the impairments." Pl.'s Br. (Dkt. 13) at p. 1.

In her second brief, filed almost six months after the Commissioner filed motion for summary judgment, plaintiff identified the issue as follows:
"Whether the finding with respect to the plaintiff's residual functional capacity is consistent with applicable legal standards and supported by substantial evidence when the administrative law judge failed to obtain a medical opinion about her limitations from a treating physician or an examining physician based on personal knowledge of her medical condition." Pl.'s Br. (Dkt. 21) at p. 1.

at *7 (E.D.Tex. Feb. 27, 2003) held that a residual functional capacity assessment performed by a *reviewing* physician is insufficient as a matter of law.

The Commissioner responds that ALJ Meyer assessed residual functional capacity in accordance with correct legal principles, and that his assessment is supported by substantial evidence. Deft.'s Br. at p. 4–11. The Commissioner argues that, under regulation 20 C.F.R. § 416.912(e), ALJ Meyer was not required to contact plaintiff's treating physician because record "evidence was more than adequate to make a determination that Plaintiff was not disabled." *Id.* at p. 12. The Commissioner also argues that ALJ Meyer was not required to order a consultative examination because "the facts did not necessitate another examination." *Id.* at p. 13. The Commissioner argues that, at the administrative hearing, plaintiff's attorney neither requested nor recommended that the ALJ obtain a consultative examination and, in fact, indicated at the end of the hearing that he had nothing further to present. *Id.*

## V.  DISCUSSION AND ANALYSIS

Regulations require a five-step sequential analysis for initial disability determinations[5] If a claimant is found not disabled at any step, remaining steps are not considered. 20 C.F.R. § 416.920 (2005).

## A.  Residual Functional Capacity

When analysis proceeds to steps four or five, an administrative law judge must determine a claimant's "residual functional capacity" which the Commissioner defines as "the most you can still do despite your limitations." 20 C.F.R. § 416.945(a) (2005). The Commissioner perceives residual functional capacity as involving three components: physical abilities, mental abilities, and other abilities affected by impairments. 20 C.F.R. § 416.945(b)-(d) (2005). When making a determination, the Commissioner decides whether an applicant retains physical and mental abilities necessary to perform activities generally required by competitive, remunerative work. *See* Soc. Sec. R. 96–8p (1996), 1996 WL 374184, at *2.

## B.  Necessity for Medical Source Opinion

■ *Ripley* states that assessment of residual functional capacity is an *administrative* finding reserved to the Commissioner, not *medical sources*. *See,* 67 F.3d at 557.[6] However, *Ripley* clarifies that an administrative law judge cannot determine from raw medical data effects of impairments on claimants' ability to work. Therefore, an administrative law judge usually should request a "medical source statement" describing types of work that an applicable is still capable of performing. *Id.* Such statement should include a statement about what the applicant can still do despite his impairments "based on the medical source's findings." *Id.,* at 557 n. 23.

---

5. Relevant to the instant appeal, steps four and five are as follows:
   4. The Commissioner determines *whether the impairment prevents the individual from engaging in his regular previous employment.*
   5. The Commissioner determines *whether other work exists in the national economy which the applicant can perform.*

20  C.F.R. §  416.920(4)(iv)-(v) (2005).

6. This view is consistent with the Commissioner's interpretations. *See* Soc. Sec. R. 96–8P (1996), 1996 WL 374184, at *2, and Soc. Sec. R. 96–5p (1996), 1996 WL 374183, at *2 (both stating that determination of RFC is an administrative finding on an issue reserved to the Commissioner).

*Ripley* held that absent such statement, the Commissioner's residual functional capacity determination was unsupported by substantial evidence. Plaintiff also correctly asserts that *Ripley* remanded the case to the Commissioner with instructions to obtain a report from a *treating* physician regarding effects of the plaintiff's condition upon his ability to work. However, for reasons stated below, *Ripley* cannot be fairly viewed as establishing a rule that *only* treating physicians may provide the required "medical source statement."

First, *Ripley* repeatedly used the term "medical source" when describing the type of evidence necessary to interpret raw medical data regarding effects of an applicant's condition upon his ability to work. Had the court meant "treating physician," it would have used that more precise term. Second, the term "medical source" is a well-recognized term of art that includes treating, examining and consultative resources. 20 C.F.R. 416.902 (2005). Third, the Commissioner's regulation—which enjoys force of law—specifically permits the administrative law judge to consider residual functional capacity assessments made by "State agency medical and psychological consultants and other program physicians" to be "statements about what you can still do." 20 C.F.R. 416.913(c) (2005).

Plaintiff cites, and the court's independent research finds, no binding judicial precedent requiring the Commissioner to obtain an assessment of work-related limitations only from a treating or examining physician. *Ripley* did *not* hold that an assessment from an examining or reviewing physician is legally inadequate. Subsequent jurisprudence uniformly rejects the argument that an administrative law judge ALJ may rely only on an assessment from a treating source. *See e.g., Onishea v. Barnhart,* 116 Fed.Appx. 1, 2004 WL 1588294 (5th Cir. July 16, 2004) (ALJ may rely on a state examiner's function-by-function assessment of a claimant's exertional limitations when determining residual functional capacity); *Zeno v. Barnhart,* No. 1:03cv649, 2005 WL 588223, at *9 (E.D.Tex. Feb. 4, 2005) (ALJ may rely on state examiner's RFC assessment).

*Browning v. Barnhart,* cited by plaintiff, also expressly rejects the premise that a valid residual functional capacity assessment must be supported by treating physician opinion. *Id.,* 2003 WL 1831112, at *6. *Browning* held that a reviewing physician's assessment was inadequate *in that case* because it did not comply with instructions on a Social Security form[7] to recite specific evidentiary facts and explain why the medical evidence supported the conclusions reached.

■ In the present case, the reviewing physician specifically addressed the physical functions required in ordinary work (e.g., lifting, standing, etc) and he evaluated plaintiff's impairments with regard to those physical functions and other factors such as environment, vision, etc., in the context of an ordinary work day. Moreover, he explained why the evidence supports his conclusions.[8] His assessment, therefore, does not suffer from the deficiency observed in *Browning,* and no other reason suggests itself as to why it might not constitute substantial evidence upon which ALJ Meyer could base a residual functional capacity determination. This point of error therefore fails.

---

7. Form SSA–4734–BK.

8. Dr. Barnes noted absence of "routine medications," ability to ambulate without assistance, "intact rapid movements" and lack of "sensory deficits," and lumbar MRI which reveals "lumbar spondylosis without any significant stenosis." Tr. 124.

## C. Developing the Record

■ Administrative law judges must fully and fairly develop facts relevant to claims for benefits. *Kane v. Heckler,* 731 F.2d 1216, 1219–1220 (5th Cir.1984); 42 U.S.C. 405(g); 20 C.F.R. 410.640 (2002). Failure to carry out this duty constitutes legal error, and precipitates a decision unsupported by substantial evidence. *James v. Bowen,* 793 F.2d 702, 704 (5th Cir.1986); (quoting *Kane v. Heckler,* 731 F.2d at 1219); *see also Brock v. Chater,* 84 F.3d 726 (5th Cir.1996); *Davis v. Califano,* 599 F.2d 1324 (5th Cir.1979); *McGee v. Weinberger,* 518 F.2d 330 (5th Cir.1975).

■ Regulation 20 C.F.R. § 416.912 establishes a procedure whereby an administrative law judge may further develop the record by recontacting a claimant's medical sources or by obtaining a further consultative examination. Social Security Ruling 96–2p amplifies this option by describing when additional evidence or clarifying reports may be necessary. *See* Soc. Sec. R. 96–2p (1996), 1996 WL374188, at *4. Essentially, the duty to re-contact is triggered when the evidence is insufficient to make an *informed* determination. No regulation, ruling, or court holding imposes a duty to re-contact a treating or other medical source simply because existing evidence is inadequate for a *favorable* determination.

■ Plaintiff fails to argue or show that the evidence before ALJ Meyer was insufficient to permit an *informed* decision, except for arguments considered and reject-

ed in the preceding section. Hence, there is no basis for the court to conclude that the decision is unsupported by substantial evidence for lack of an updated medical source opinion.

■ Even were the court to assume *arguendo* that ALJ Meyer did not comply Regulation 20 C.F.R. § 416.912 or Social Security Ruling 96–2p (both relating to recontacting medical sources), such error would warrant reversal and remand only if the plaintiff affirmatively demonstrated prejudice or survived harmless error review.[9] Plaintiff points to no additional medical source evidence that might have led to a different decision. In absence of such evidence, plaintiff cannot demonstrate prejudice or harmful error. Thus, the court must affirm.

## VI. Recommendation

The Commissioner's decision should be affirmed.

## VII. Objections

Objections must be: (1) specific, (2) in writing, and (3) served and filed within ten days after being served with a copy of this report. 28 U.S.C. § 636(b)(1); Fed. R.Civ.P. 1(a), 6(b), and 72(b).

A party's failure to object bars that party from: (1) entitlement to *de novo* review by a district judge of proposed findings and recommendations, *Rodriguez v. Bowen,* 857 F.2d 275, 276–77 (5th Cir.1988), and (2) appellate review, except on

---

**9.** Harmless error analysis applies to administrative failure to comply with *a regulation. See Frank v. Barnhart,* 326 F.3d 618, 622 (5th Cir.2003). Violation of a· social security *ruling* merits remand only when a claimant affirmatively demonstrates prejudice. *Hall v. Schweiker,* 660 F.2d 116, 119 (5th Cir.1981) (citing *Pacific Molasses Co. v. F.T.C.,* 356 F.2d 386 (1966)); *see also Morton v. Ruiz,* 415 U.S. 199, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974).

The two concepts are closely related. Prejudice is established by showing that additional evidence could have been produced, and "that the additional might have led to a different decision." *Newton v. Apfel,* 209 F.3d 448, 458 (5th Cir.2000) (citing *Ripley,* 67 F.3d at 557. An error is harmless unless there is reason to think that remand might lead to a different result. *Fisher v. Bowen,* 869 F.2d 1055, 1057 (7th Cir.1989)).

grounds of plain error, of unobjected-to factual findings and legal conclusions accepted by the district court, *Douglass v. United Servs. Auto. Ass'n.*, 79 F.3d 1415, 1417 (5th Cir.1996) (en banc).