United States Court of Appeals
Fifth Circuit

**F I L E D**

April 16, 2007

Charles R. Fulbruge III
Clerk

In the
## United States Court of Appeals
for the Fifth Circuit

———————

m 06-31126
Summary Calendar

———————

SHIRLENE REYNAUD,

Plaintiff-Appellant,

VERSUS

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee.

———————

Appeal from the United States District Court
for the Western District of Louisiana
m 1:05-CV-194

———————

Before SMITH, WIENER, and OWEN,
 Circuit Judges.

PER CURIAM:[*]

———————

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Shirlene Reynaud challenges a judgment affirming a decision of the Commissioner of Social Security (the "Commissioner") denying her claim for social security disability benefits. Because the Commissioner's decision is supported by substantial evidence and comports with the relevant legal standards, we affirm.

I.

We review a denial of social security benefits "only to ascertain whether (1) the final de-

cision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). Substantial evidence is more than a scintilla, but less than a preponderance, *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993), and a decision is supported by substantial evidence if we find evidence sufficient to establish that a reasonable mind could reach the Commissioner's conclusion, *Ripley v. Chater,* 67 F.3d 552, 555 (5th Cir. 1995).

We do not substitute our judgment for the Commissioner's, even if the evidence weighs against his decision. *Newton*, 209 F.3d at 452. If we find conflicts in the evidence, we accept the Commissioner's resolution of the conflicts so long as that resolution is supported by substantial evidence. *Id.*

## II.
Reynaud alleges that the administrative law judge ("ALJ") did not fully develop the record and consider all relevant evidence before finding that she did not qualify for disability payments. Specifically, Reynaud claims the ALJ should have ordered a consultative examination ("CE") to determine whether she suffered from mental retardation or depression.

An ALJ must fully and fairly develop the facts relative to a claim for disability benefits. *Ripley*, 67 F.3d at 557. Reversal is appropriate, however, only if the applicant shows that she was prejudiced. *Id.* Prejudice can be established by showing that had the ALJ adequately performed his duty, he "could and would have adduced evidence that might have altered the result." *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984).

Reynaud bears the burden of proving her disability, and if she is unable to provide suf-

ficient medical evidence, the ALJ may make a decision based on the evidence available. *Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991). Though the decision to order a CE is in the discretion of the ALJ, *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989), such an examination must be ordered when a CE "is *necessary* to enable the administrative law judge to make the disability decision," *Pierre v. Sullivan*, 884 F.2d 799, 802 (5th Cir. 1989) (quoting *Turner v. Califano*, 563 F.2d 669, 671 (5th Cir. 1977)).

It is not disputed that Reynaud did not claim that she was mentally retarded or depressed. Instead, her claim stems from a medical report by her personal physician, Dr. Mayeaux, that included a statement that Reynaud was "somewhat mentally compromised." A state agency worker called the doctor to inquire about the statement, and the worker's notes from the call indicate that the doctor stated that Reynaud "has a long standing depression which has been treated in the past with prozax and celexa" and that he "thinks that [Reynaud] has a very low IQ."

The above entry in Reynaud's file is followed by the recommendation of an agency worker that a CE be ordered to ascertain whether Reynaud suffered from mental retardation or depression. That entry is followed by another, presumably from a different agency worker, stating that

> Dr. Mayeaux's statements are not supported by the file evidence. There is no evidence that the claimant is under any current treatment for depression. There was no evidence of depression at the internist CE. She gives no limitations from depression on her ADL's. As far as her IQ, she graduated from high school and was not in special ed. She raises her 13 yr. old son, shops unas-

2

sisted, reads newspapers and magazines, and performs all household chores independently. There is no MDI for depression or mental retardation and no CE is needed.

The record also includes a Psychiatric Review Technique form completed by a state agency psychologist, Dr. Spurrier, noting that Reynaud does not suffer from any "medically determinable impairment."

The district court found that the ALJ had fairly and fully developed the record, because Reynaud did not submit any evidence of her alleged mental disability, and the record did not contain evidence that required the ALJ to order a CE. We agree. Reynaud did not provide any evidence of a mental impairmentSSshe relies instead on an analysts's notes from a phone call with Mayeaux, and the analyst's recommendation, based on that phone call, that a CE be administered. As found by the district court, however, there are no medical records to support Mayeaux's statement.[1]

Further, the administrative record includes the opinion of a state agency psychologist that Reynaud did not suffer from a mental impairment.

"When there is no contention [by the claimant] that a claimant is mentally retarded, a few instances in the record noting diminished intelligence do not require that the ALJ order an I.Q. test in order to discharge his duty to fully and fairly develop the record." *Pierre*, 884 F.2d at 803. The ALJ was within in his discretion in relying on the medical evidence presented.

### III.

Reynaud argues that the testimony by the vocational expert ("VE") does not constitute substantial evidence. She contends that the hypothetical question to the vocational expert was flawed because the question omitted consideration of the impairments recognized by the ALJ: diabetes mellitus, hypertension, obesity, and degenerative joint disease. This argument appears to be based on the fact that the specific impairments were not mentioned by name in the hypothetical question. But, the ALJ considered Reynaud's testimony as well as the impairments evident in her medical records to ascertain her residual functional capacity, which was included in the hypothetical question.[2] Further, Reynaud's representative

---

[1] Reynaud correctly notes that we accord considerable weight to opinions of the claimant's personal physician. *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001). It is also true, however, that

> when good cause is shown, less weight, little weight, or even no weight may be given to the physician's testimony. The good cause exceptions we have recognized include disregarding statements that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence.

*Id*. (citing *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir.1994)). *See also Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as factfinder has the sole responsibility for weighing the (continued...)

---

[1](...continued) evidence and may choose whichever physician's diagnosis is most supported by the record.") (citing *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987)). Mayeaux's statements are both conclusional and unsupported by the evidence.

[2] The disputed hypothetical question was, in full, as follows:

(continued...)

thoroughly cross-examined the VE and had ample opportunity to pose an alternative hypothetical question. Because the hypothetical question reasonably incorporated the impairments and limitations recognized by the ALJ, and because Reynaud had the opportunity to add consideration of other asserted limitations, there is no error. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988).

Because the Commissioner's decision denying Reynaud benefits is supported by substantial evidence and comports with the relevant legal standards, we AFFIRM the district court's decision upholding the decision of the Commissioner.

---

[2](...continued)
For each question, please assume that I'm asking about someone who has, who is the same age and has the same education, the same vocational background as Ms. Reynaud. For the first hypothetical, if I were to find that she has the residual functional capacity to perform simple, unskilled light work with no detailed instructions, that does not require climbing of ladders, ropes or scaffold, requires only occasional balancing, stooping, kneeling, crouching, and crawling with mild limitations in concentration and attention, would there be any jobs that she could perform in the national or regional economy?