**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 13, 2010

Charles R. Fulbruge III
Clerk

No. 09-60435
Summary Calendar

SCOTT B GANN,

Petitioner

v.

SECURITIES AND EXCHANGE COMMISSION,

Respondent

On Petition for Review of an Order of the
Securities and Exchange Commission
Admin. Proc. File No. 3-13009

Before KING, STEWART, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Petitioner Scott B. Gann seeks review of an order of the Securities and Exchange Commission ("Commission"), which imposed a permanent associational bar against him for violating § 10b ("Section 10b") of the Securities Exchange Act of 1934 ("the Exchange Act") and Rule 10b-5 promulgated thereunder. Gann asserts that the Commission's order is unsupported by the record and is an abuse of the Commission's discretion. We find that the

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 09-60435

Commission's decision was supported by the record and was not an abuse of discretion. Accordingly, we AFFIRM.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The facts of this case have been exhaustively stated in the opinions arising from the underlying civil enforcement action against Gann. *SEC v. Gann*, No. 3:05-CV-0063-L, 2008 WL 857633, *1–*8 (N.D. Tex. March 31, 2008), *aff'd*, 565 F.3d 932, 934–35 (5th Cir. 2009). Here, we recite only those facts that are necessary to provide a framework for this opinion.

Gann is a stockbroker, and he was formerly employed in that capacity at Southwest Securities, Inc. ("SWS"). While at SWS, Gann partnered with a co-worker, George Fasciano, to engage in market timing trades on behalf of Haidar Capital Management and Capital Advisor ("HCM").[1]

Before engaging in any trading on behalf of HCM, Gann and Fasciano conducted extensive research. They contacted various mutual fund companies to determine their rules regarding market timing. They learned that some fund companies prohibited market timing trades and that the funds would send "block notices" prohibiting traders from continuing to engage in such trades if the trades were in violation of the fund companies' rules. To circumvent the mutual funds' rules and block notices, Gann and Fasciano were told by a fellow stockbroker at SWS that they would have to fly "under the radar" by using multiple account and representative numbers; Gann and Fasciano also learned that HCM employed the same multiple number strategy to "avoid being shut down" by the mutual funds that prohibited market timing trades.

After they began trading on HCM's behalf, Gann and Fasciano received sixty-nine block notices from thirty-four mutual funds. These block notices, however, did not stop Gann and Fasciano from continuing to engage in market

---

[1] For a discussion on market timing, see our explanation in *Gann*, 565 F.3d at 934–35.

No. 09-60435

timing trades; instead, Gann and Fasciano employed the number changing strategy they had learned from HCM and others to continue executing market timing trades in various mutual funds, even though those funds had prohibited them from engaging in such trades. Because of their conduct, the Commission filed a civil enforcement action in federal district court against Gann and Fasciano, alleging that their actions violated Section 10(b), 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5.

The Commission succeeded in its civil enforcement action against Gann.[2] The district court found that Gann's use of different account and registered representative numbers were material misstatements designed to deceive the mutual funds that sought to prevent him from engaging in market timing trades. Based on its findings, the district court held that Gann violated Section 10b and Rule 10b-5. *Gann*, 2008 WL 857633 at *12. We affirmed the district court's holding and findings of fact.[3] *Gann*, 565 F.3d at 934.

Based on the civil enforcement action, the Commission brought an administrative action against Gann in which it sought to bar him under Section 15(b) of the Exchange Act ("Section 15(b)") and Section 203(f) of the Advisers Act[4] ("Section 203(f)") from associating with any broker, dealer, or investment adviser. Finding that Gann was subject to sanction, an Administrative Law Judge ("ALJ") issued an order entering a permanent associational bar against Gann. Gann appealed the ALJ's decision to the Commission. The Commission

---

[2] Fasciano settled with the Commission before trial.

[3] Because the factual issues in this case were fully litigated and resolved in the district court, we treat the district court's findings of fact as conclusive and binding on the parties. *See United States v. Shanbaum*, 10 F.3d 305, 311 (5th Cir. 1994) ("Issue preclusion, or collateral estoppel . . . promotes the interests of judicial economy by treating specific issues of fact . . . that are validly and necessarily determined between two parties [in a prior action] as final and conclusive.").

[4] Investment Advisers Act of 1940 [15 U.S.C. § 80b-1 *et seq.*].

No. 09-60435

conducted an independent review and reached the same conclusion as the ALJ. This appeal followed.

## II. DISCUSSION

Gann raises two issues on appeal. First, whether the Commission's decision to permanently bar him from associating with any broker, dealer, or investment adviser is supported by the record. Second, whether the Commission abused its discretion by permanently barring him instead of suspending him for one year. We find that the Commission's decision to impose a permanent bar was supported by the record, and we do not reach Gann's second issue because he failed to raise it before the Commission. Accordingly, we affirm the Commission's decision.

A. Standard of Review

We review the Commission's decision to impose sanctions for an abuse of discretion. *Meadows v. SEC*, 119 F.3d 1219, 1224 (5th Cir. 1997) (quoting 5 U.S.C. § 706(2)(A)). We will uphold the Commission's findings of fact if they are supported by "substantial evidence." 15 U.S.C. § 78y(a)(4). "'Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. It is more than a mere scintilla [but] less than a preponderance.'" *Meadows*, 119 F.3d at 1224 (quoting *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995)). "It is not the function of an appellate court to reweigh the evidence or to substitute its judgment for that of the Commission." *Id.*

B. The Commission's Findings of Fact

Gann asserts that the Commission's findings of fact, which form the basis of its decision, are not supported by the record and, therefore, the Commission's imposition of a permanent bar based on those facts was arbitrary and an abuse of discretion. Gann challenges the following facts that the Commission found in support of its decision to impose a permanent associational bar: (1) Gann's market timing trades on behalf of HCM were egregious and recurrent violations

4

of the law; (2) Gann acted with a high degree of scienter; and (3) Gann's continued employment in the securities industry will provide him future opportunities for violations.  We conclude that these findings of fact are supported by "substantial evidence" in the record; therefore, they must be upheld.  15 U.S.C. § 78y(a)(4); *Meadows*, 119 F.3d at 1224.

The record supports the finding that Gann's actions were egregious and recurrent.  Gann received a number of "block notices" that he knew prohibited him from continuing to engage in market timing trades, but, instead of heeding those notices, Gann continued to engage in market timing trades and evaded detection by using different account and representative numbers.  *Gann*, 2008 WL 857633 at *5–8.  The record shows that Gann engaged in over one hundred prohibited trades in at least six different mutual funds after the funds had sent him "block notices." *Id.*  These facts show that Gann engaged in numerous and repeated acts of deception, such that the Commission's finding that Gann's actions were egregious and recurrent is supported by substantial evidence. *See Lowry v. SEC*, 340 F.3d 501, 505 (8th Cir. 2003) (finding that a petitioner's conduct was egregious when he knowingly engaged in a series of deceptive acts).

The record also supports the Commission's finding that Gann acted with such a "high degree of scienter" as to warrant the imposition of sanctions.  To support the imposition of sanctions, a finding of "intent to deceive, manipulate, or defraud" or "severe recklessness" is sufficient. *Meadows*, 119 F.3d at 1228; *Rizek v. SEC*, 215 F.3d 157, 162 (1st Cir. 2000); *see Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 366 (5th Cir. 2004) (defining scienter as an "'intent to deceive, manipulate, or defraud' or 'that severe recklessness' in which the 'danger of misleading buyers or sellers is either known to the defendant or is so obvious that the defendant must have been aware of it.'" (quoting *Broad v. Rockwell Int'l Corp.*, 642 F.2d 929, 961–62 (5th Cir. 1981))).  The issue of Gann's scienter was fully litigated in the civil enforcement action

brought against him, and, in that action, the district court found that Gann acted with "the intent to deceive or defraud the mutual funds with which he traded on behalf of HCM." *Gann*, 2008 WL 857633 at *11.

As Gann acknowledges, the district court's finding is binding on the parties. However, he argues that the district court found only "scienter" and not its "degree." He also argues that our prior holding that the evidence in support of scienter and that opposing it were in "equipoise" requires a conclusion that there was not a "high" degree of scienter. *See Gann*, 565 F.3d at 939. The district court found that Gann engaged in intentional, knowing misrepresentations that occurred over several months and included numerous trades. These facts are sufficient to support a finding that Gann acted with a "high degree of scienter." Our statement about the amount of evidence on each side was followed by the conclusion that the *credibility* of that evidence was for the trier of fact. Thus, while there might have been equal *amounts* of evidence, they were not equally credible or compelling. We conclude that substantial evidence supports the Commission's finding of a "high degree of scienter."

The Commission's finding that Gann's continued employment in the securities industry will provide opportunities for future violations is also supported by the record. *See also Gann*, 565 F.3d at 940 ("The question is whether his job *provides opportunities* for future infractions. Gann is still a stockbroker, so whether or not he trades mutual funds, his job certainly permits him the opportunity to do so."). The record shows that Gann continues to be employed as a stockbroker and that his job affords him the opportunity to trade mutual funds. It is also noteworthy that, despite two courts and the Commission finding that Gann acted wrongfully, he still contends he did nothing wrong. The Commission could certainly weigh this myopia about his own behavior as a factor against Gann – if he doesn't know right from wrong in this industry, how can he avoid wrongdoing in the future? The Commission's finding that Gann's

No. 09-60435

continued employment will present opportunities for future violations is supported by substantial evidence. [5]

Because a review of the record shows that the Commission's findings of fact are supported by "substantial evidence," we find that the Commission's decision to impose permanent bar based on its findings was not arbitrary or an abuse of discretion.

C. The Commission's Choice of Sanction

Gann also appeals the Commission's choice of a permanent associational bar instead of a twelve-month suspension. We may not consider an "objection to an order . . . of the Commission . . . unless it was *urged* before the Commission." 15 U.S.C. § 78y(c)(1) (emphasis added). Gann never argued in the administrative proceedings below that a twelve-month suspension should be imposed in lieu of a permanent associational bar. As a consequence, we cannot consider this issue.[6] *See MFS Securities Corp. v. SEC*, 380 F.3d 611, 620–21 (2d Cir. 2004) (finding that the court could not consider an argument that the petitioner did not raise before the Commission); *Geiger v. SEC*, 363 F.3d 481, 488

---

[5] Although the record shows that Gann's continued employment will provide him future opportunities to violate the law, Gann makes numerous assurances that he will not violate the law in the future. To lend credibility to his assurances, Gann cites to the fact that he has not committed another violation since he stopped trading mutual funds for HCM, that he has no intention of ever trading mutual funds again, and that he is willing to forgo his Series 65 license, which allows him to trade mutual funds. The Commission could and did weigh these facts in Gann's favor, but it ultimately found these facts unpersuasive because of Gann's continuing refusal to admit that he did anything wrong. Our job is not to reweigh the evidence. *Meadows*, 119 F.3d at 1224. As stated earlier, we will only overturn the Commission's decision if we find that it abused its discretion, and these facts do not show that the Commission abused its discretion in concluding that Gann's continued employment in the field provides opportunities for future violations.

[6] Before the Commission, Gann only argued that the ALJ's findings of fact and conclusions did not support the imposition of a permanent associational bar. He never argued that the ALJ's findings of fact and conclusion supported the imposition of a lesser sanction. While Gann's failure to raise this argument could be excused if "there was a reasonable ground for [his] failure to do so," Gann has not shown such grounds. 15 U.S.C. § 78y(c)(1).

(D.C. Cir. 2004) (finding that "Geiger waived the argument by failing to raise it before the Commission"); *C.E. Carlson, Inc. v. SEC*, 859 F.2d 1429, 1439 ("Moreover, in fairness to the SEC, petitioners should not be heard to offer this new theory on appeal [when] such concerns could have been addressed below.").

AFFIRMED.